Argued July 22, reversed September 10, petition for rehearing
denied September 30, petition for review denied
November 17, 1970

CITY OF SALEM, *Respondent, v.*
TRUSSELL ET UX, *Appellants.*
474 P2d 371

*Mark P. O'Donnell*, Portland, argued the cause for appellants. With him on the briefs was Edwin J. Welsh, Portland.

*David J. DeMartino*, Assistant City Attorney, Salem, argued the cause for respondent. With him on the brief was William J. Juza, City Attorney, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

SCHWAB, C. J.

This is an appeal from a mandatory injunction directing the defendants to remove from property owned by them in Salem, Oregon, a mobile home used as their residence. This suit, which we try de novo on the record, is based upon ch 36 of the City of Salem Revised Code. This chapter is entitled Tourist Parks. The relevant sections of ch 36 were originally adopted in 1937. Section 36.010 contains the following definitions:

> "* * * * *.
>
> "Automobile tourist park or camp. An 'automobile tourist park' or 'camp' is defined to be any plot of ground where accomodations [sic] is [sic] provided for three or more *automobile trailers or house cars used by transients as living or sleeping quarters.*
>
> "* * * * *.
>
> "Tourist park or camp. A 'tourist park' or 'camp' is hereby defined to be any plot of ground upon which three or more single-family camp cottages are located and *maintained for the accommodation of transients* by the day, week or month where a charge is or is not made.
>
> "* * * * *." (Emphasis supplied.)

Section 36.350 which was the basis of the injunction provides:

> "In any location outside a park or camp governed by this chapter, it shall be unlawful for an

automobile trailer or house car to remain for a longer time than forty-eight hours during any thirty day period, without first having obtained a permit approved by the chief of police and the health department * * *."

The ordinances are obviously intended to govern the location and use of travel trailers used by transients as distinguished from mobile homes designed, not for itinerant use, but, rather, for permanent residences. The uncontroverted testimony is that in 1937 when the ordinances were adopted there was no such thing as a trailer with inside plumbing. In contrast, the defendants' mobile home is not designed for or used as itinerant living quarters. It is 20' x 56'. It has 1060 square feet of useable living space, containing three bedrooms and two bathrooms. It was purchased without wheels and rests on concrete blocks; it is completely skirted; it has awnings and a concrete patio; and it is adjacent to a concrete garage built to serve it. It is plumbed, heated, and connected to the city sewer system.

In *City of Astoria v. Nothwang*, 221 Or 452, 351 P2d 688 (1960), the court held that an Astoria ordinance similar to the Salem ordinance we are here considering did not apply to a mobile home permanently affixed to the land by connections with sewers, water pipes and electrical utilities and used as a permanent residence. The Astoria ordinance prohibited the "parking" of trailer houses in the city of Astoria except at overnight campgrounds. The court held that the word "park" meant to "leave temporarily," rather than to install permanently. What the court said in that case is equally applicable here.

"We turn next to the legal effect of the word 'park' as used in the ordinance. The city council

intended to prohibit by Section 2 all forms of transient parking on the public streets of the city, and by Section 3 at least all forms of temporary parking on unlicensed private lands within the city. Whether the city council also intended to prohibit the more permanent type of installation disclosed by the pleadings and evidence is the most sharply contested question in the instant case.

"The city says the ordinance is unequivocal, and that it prohibits any residential use of trailers on private lands other than on licensed trailer parks. The Defendant contends that the ordinance fails to cover her situation because her trailer is not 'parked', but is permanently affixed to the land by the connections with sewers, water pipes and electrical utilities. The trial court agreed with the defendant and adopted the interpretation of the word 'park' as used in the dictionary, supra.

"Many city councils, acting in the lawful exercise of the police power, have determined that they do not want trailers parked on private property except during such times as the devices are uninhabited, as in seasonal storage and the like. See *Napierkowski v. Gloucester Tp.*, 29 NJ2d 481, 150 A2d 481 (1959), and cases noted in Hodes and Roberson, The Law of Mobile Homes (CCH Chicago 1957) 36.

"Astoria, under its charter, has it within its power to enact a valid zoning ordinance. Such an ordinance can be drawn to prevent the placement of various structures on freeholds within the city's borders. ORS 227.210 to 227.310; *Shaffner et al v. City of Salem et al*, 201 Or 45, 268 P2d 599. Such ordinances have been applied to mobile homes and have been upheld by numerous decisions. See cases discussed in Regulation and Taxation of House Trailers, 22 U Chi L Rev 738 (1955), and Hodes and Roberson, The Law of Mobile Homes, supra, at 110.

"The ordinance before this court is not a zoning

ordinance. Its primary purpose is to promote public heath, safety and sanitation by forbidding the use of parked vehicles as living quarters either on the public streets or on privately owned land within the city.

"In the instant case the structure complained of is not parked in a transient sense on Defendant's land. It is installed on the land and cannot be removed without the use of heavy equipment and the employment of plumbers, electricians, and house movers.

"This court is aware of the decisions in other states which hold that somewhat similar ordinances are enforcible as against trailer owners situated in circumstances similar to those of the Defendant. *Davis v. City of Mobile*, 245 Ala 80, 16 So2d 1; *Cooper v. Sinclair*, 66 So2d 702 (Fla Sup Ct 1953), cert. den. 346 US 867, 74 SCt 107, 98 LEd 377 (1953); *Wyoming Township v. Herweyer*, 321 Mich 611, 33 NW2d 93; Hodes and Roberson, The Law of Mobile Homes, supra, 36-37, 91-93; Regulation and Taxation of House Trailers, U Chi L Rev, supra, at 739; Rhyne, Municipal Law (1957), 584.

"The power of a city under its charter to enact police regulations should be upheld by the courts where the regulation is reasonable. We do not say the city council went beyond the necessities of public health and safety in deciding which uses of land within the city are to be proscribed. However, we believe that the trial judge correctly construed the word 'park' in the ordinance, as proscribing the transient use of trailers for residential purposes. He followed the dictionary meaning of the word. Ordinances which limit the right of a freeholder in the use of his land should not have restrictive matter read into them. The City has the power to enact a zoning ordinance or to amend its parking ordinance to include such words as 'maintain', 'keep', or 'inhabit'. In *Napierkowski v. Gloucester Tp.*, supra, the city ordinance in question provided:

" 'No person * * * [sic] owning * * * [sic]

any trailer shall locate, park, keep, or maintain said trailer upon any lot or tract of land within the Township of Gloucester, except upon a trailer camp conducted, maintained, and licensed in full and complete compliance with all the provisions of this Ordinance.' 29 NJ2d at 486.''

Such language, had it been used in the instant case, would have been broad enough to proscribe the Defendant's conduct. But the use of the word 'park' by itself, in the context of the 1939 ordinance, must be assumed to have meant merely 'park' and not 'park, keep, or maintain' which the City would have us read into the ordinance." 221 Or at 458-60.

■ The plaintiff argues that defendants should not be heard to contend that their mobile home falls within the prohibition of § 36.350 of the city code because they orally stipulated at the trial that their mobile home was in violation of § 36.350. The record discloses that oral stipulations were being made during the course of the trial at a rather rapid pace and without much time to deliberate on the choice of precise words. Some of the language could be construed as stipulating what the plaintiff contends, and this language may in fact have misled the trial judge. Yet the record, which includes trial memoranda submitted by the parties, taken as a whole indicates that it was not the defendants' intention to waive the point of non-applicability of § 36.350, but, rather, simply to expedite the trial by stipulating that the mobile home was on defendants' private property in the city of Salem; that it had been there for more than 48 hours; and that it was not there pursuant to a permit from the chief of police and the health department.

The injunction must be vacated.

Reversed.