Argued April 6, affirmed April 27, 1960

# CITY OF ASTORIA *v.* NOTHWANG

351 P. 2d 688

*James L. Hope,* Astoria, argued the cause and filed a brief for appellant.

*Jay H. Stockman,* Astoria, and *Bryan Goodenough,* Salem, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, O'CONNELL, GOODWIN and HARRIS, Justices.

GOODWIN, J.

The City of Astoria, plaintiff below, appeals from a decree denying injunctive relief prayed for against Babe R. Nothwang, defendant, who placed a trailer house on a city lot in what the city contends was a violation of a municipal ordinance. The parties will be referred to in this opinion as the City and the Defendant.

There is substantial agreement on the facts. Defendant purchased, some time prior to October 13, 1957, a city lot, and is now the owner thereof. There is no zoning ordinance in Astoria.

On August 21, 1939, the City of Astoria adopted the following ordinance:

"ORDINANCE NO. G39-43

"Introduced by Commissioner Otto A. Owen.

"An ORDINANCE RELATING TO PARKING OF TRAILER HOUSES, AUTO HOMES, AND CAMP CARS, AND MAKING VIOLATIONS UNLAWFUL, AND PROVIDING FOR A PENALTY.

"BE IT ORDAINED BY THE CITY OF ASTORIA AS FOLLOWS:

"*SECTION 1.* Definition. Trailer house, auto home, or camp car is defined as any unit for living or sleeping quarters which is equipped with wheels or similar devices and use [sic] in transporting said unit from place to place whether by motor power or other means.

"*SECTION 2.* It shall be unlawful for any person operating a trailer house, auto home, or camp car or similar vehicle to park the same from 6:00 o'clock p. m. to 6:00 o'clock a. m. following within the City of Astoria upon any street, highway, alley, park, or other public place, except that the motor vehicle to which such trailer, auto home, or camp

car is attached can not proceed because of a breakdown.

"*SECTION 3.* It shall be unlawful at any time for any person to park any such trailer, auto home, or camp car upon private property in the City of Astoria, except when the same is not in use and except at overnight camps or cabins, municipal camp grounds, or state licensed parking places, and all such places shall be equipped to properly care for the disposal of rubbish, garbage, excreta, and waste, and such places shall be under the supervision of the police and health departments of the City of Astoria at all times for the purpose of protecting public health and sanitation.

"*SECTION 4.* Any person violating any of the provisions of this ordinance shall upon conviction thereof in the Municipal Court of the City of Astoria be punished by a fine not exceeding $100.00, or by imprisonment in the City Jail for a period not exceeding 50 days, or by both such fine and imprisonment.

"Passed by the Common Council this 21st day of August, 1939.

"Signed and approved by the Mayor this 21st day of August, 1939.

"W. C. Logan
———————————
Mayor

"Attest:
O. K. Atwood
———————————
City Auditor."

Defendant does not question the validity of the ordinance above set out, but only its application to her situation.

On or about October 13, 1957, Defendant purchased and caused to be delivered to her city lot a prefabricated dwelling 45 feet long and 10 feet wide described by the City as a trailer and by the Defendant as a

mobile home. This structure was mounted on wheels and was delivered to the site by means of a truck and tractor. Defendant caused electrical and water connections to be made, and obtained city sewer service under a city permit. These utility connections have continued from October 1957 to date. The wheels with which the structure was equipped at the factory remained mounted until after the City filed this suit, whereupon they were removed. The structure is equipped with the usual modern conveniences found in homes built on the site, but in compact arrangement. The City filed suit December 3, 1957, and, pleading the above ordinance, demanded an injunction and damages, neither of which is provided for in the ordinance.

The trial court's findings state that the Defendant's structure is her permanent residence and that the wheels have been removed. The court then concluded that the device is not a trailer within the definition of the city ordinance. The court further concluded that the structure was not "parked" upon the premises but was permanently installed thereon.

The City challenges the court's conclusion that the structure is not a "trailer" and that the structure was not "parked" on Defendant's property.

If the structure complained of falls within the prohibition of the city ordinance both as a "trailer" and as a "parked" trailer, the city is entitled to injunctive relief.

■ Webster (New International Unabridged 2d ed) defines a trailer as "4 c A nonautomotive highway vehicle designed to be hauled, as by a tractor, a motor truck, or a passenger automobile." Followed in *Moffitt v. State Automobile Ins. Ass'n*, 140 Neb 578, 300 NW 837. (Trailer was a hay chopper.)

■ Webster has this to say of the transitive verb, park: "* * * . To stop and keep (a vehicle, esp. a motor vehicle) standing for a time on a public way, or to leave temporarily on a public way or in any open space, esp. in a space assigned for the occupancy of a number of automobiles * * *." Followed in *O'Brien v. Dunigan*, 187 Or 227, 210 P2d 567 (a negligence case)..

Both words have received scrutiny by courts in the years since structures on wheels have been used for dwelling purposes. The word "trailer" is construed in numerous decisions, few of which are helpful without a full recital of the context in which the definition is made. See 42 Words and Phrases, Trailers 317 et seq.

The Oregon Legislative Assembly in 1959 defined "trailer" as either a "mobile home" or a "vacation trailer". ORS 446.002 (5). And see ORS 481.022 (1) (c), which took effect January 1, 1960, making certain trailers fixtures. A "mobile home" is defined:

"* * * a vehicle or structure constructed with wheels for use on the public highways, that has sleeping, cooking, and plumbing facilities, is intended for human occupancy and is being used for residential purposes." ORS 446.002 (3).

By the current statutory definition, Defendant's structure is a mobile home. In 1957 when the suit was filed, the legislature had not defined "mobile home", but had defined a "camp car" or "trailer house" as:

"* * * any unit for living or sleeping purposes which is equipped with wheels or similar devices used for transporting the unit from place to place by motor power or other means." ORS 446.110 (since repealed).

Under the law as it existed in 1957, then, the Defendant's structure was a trailer house unless it ceased to be one when the wheels were removed. The City argues that taking off the wheels does not change the structure from a trailer to a house. The trial court disagreed and held that the trailer ceased to be a trailer when the wheels were removed.

■ We hold that at all material times the device was a trailer within the meaning of the city ordinance. The removal of the wheels, according to the evidence, was a simple operation no more complicated than the changing of a tire on a self-propelled vehicle.

We turn next to the legal effect of the word "park" as used in the ordinance. The city council intended to prohibit by Section 2 all forms of transient parking on the public streets of the city, and by Section 3 at least all forms of temporary parking on unlicensed private lands within the city. Whether the city council also intended to prohibit the more permanent type of installation disclosed by the pleadings and evidence is the most sharply contested question in the instant case.

The city says the ordinance is unequivocal, and that it prohibits any residential use of trailers on private lands other than on licensed trailer parks. The Defendant contends that the ordinance fails to cover her situation because her trailer is not "parked", but is permanently affixed to the land by the connections with sewers, water pipes and electrical utilities. The trial court agreed with the defendant and adopted the interpretation of the word "park" as used in the dictionary, supra.

Many city councils, acting in the lawful exercise of the police power, have determined that they do not want trailers parked on private property except dur-

ing such times as the devices are uninhabited, as in seasonal storage and the like. See *Napierkowski v. Gloucester Tp.*, 29 NJ2d 481, 150 A2d 481 (1959), and cases noted in Hodes and Roberson, The Law of Mobile Homes (CCH Chicago 1957) 36.

■ Astoria, under its charter, has it within its power to enact a valid zoning ordinance. Such an ordinance can be drawn to prevent the placement of various structures on freeholds within the city's borders. ORS 227.210 to 227.310; *Shaffner et al v. City of Salem et al*, 201 Or 45, 268 P2d 599. Such ordinances have been applied to mobile homes and have been upheld by numerous decisions. See cases discussed in Regulation and Taxation of House Trailers, 22 U Chi L Rev 738 (1955), and Hodes and Roberson, The Law of Mobile Homes, supra, at 110.

■ The ordinance before this court is not a zoning ordinance. Its primary purpose is to promote public health, safety and sanitation by forbidding the use of parked vehicles as living quarters either on the public streets or on privately owned land within the city.

In the instant case the structure complained of is not parked in a transient sense on Defendant's land. It is installed on the land and cannot be removed without the use of heavy equipment and the employment of plumbers, electricians, and house movers.

This court is aware of the decisions in other states which hold that somewhat similar ordinances are enforcible as against trailer owners situated in circumstances similar to those of the Defendant. *Davis v. City of Mobile*, 245 Ala 80, 16 So2d 1; *Cooper v. Sinclair*, 66 So2d 702 (Fla Sup Ct 1953), cert. den. 346 US 867, 74 SCt 107, 98 LEd 377 (1953); *Wyoming Township v. Herweyer*, 321 Mich 611, 33 NW2d 93; Hodes and Roberson, The Law of Mobile Homes, supra,

36-37, 91-93; Regulation and Taxation of House Trailers, U Chi L Rev, supra, at 739; Rhyne, Municipal Law (1957), 584.

The power of a city under its charter to enact police regulations should be upheld by the courts where the regulation is reasonable. We do not say the city council went beyond the necessities of public health and safety in deciding which uses of land within the city are to be proscribed. However, we believe that the trial judge correctly construed the word "park" in the ordinance, as proscribing the transient use of trailers for residential purposes. He followed the dictionary meaning of the word. Ordinances which limit the right of a freeholder in the use of his land should not have restrictive matter read into them. The City has the power to enact a zoning ordinance or to amend its parking ordinance to include such words as "maintain", "keep", or "inhabit". In *Napierkowski v. Gloucester Tp.,* supra, the city ordinance in question provided:

"No person * * * [sic] owning * * * [sic] any trailer shall locate, park, keep, or maintain said trailer upon any lot or tract of land within the Township of Gloucester, except upon a trailer camp conducted, maintained, and licensed in full and complete compliance with all the provisions of this Ordinance." 29 NJ2d at 486.

Such language, had it been used in the instant case, would have been broad enough to proscribe the Defendant's conduct. But the use of the word "park" by itself, in the context of the 1939 ordinance, must be assumed to have meant merely "park" and not "park, keep, or maintain" which the City would have us read into the ordinance.

Since the decree is affirmed on the application of

the ordinance to the facts in the instant case, we will not extend this opinion with a discussion of the defenses of estoppel and equal protection of the laws which were tendered in the Defendant's Answer and elaborated upon in briefs and argument.

Decree affirmed with costs to be borne by the appellant.