David S. **ALBERT** and wife Patricia Albert, Eugene Hice, Eula W. Newberry, Rex A. Riddle and Martha Scull, Plaintiffs/Appellees,

v.

Frank M. **ORWIGE** and wife, Ethel Orwige, Defendants/Appellants.

Court of Appeals of Tennessee, Western Section, at Knoxville.

Jan. 16, 1987.

Petition to Rehear Denied by Supreme Court June 1, 1987.

Application for Permission to Appeal Denied by Supreme Court May 4, 1987.

Francis X. Santore and Francis X. Santore, Jr., Greeneville, for defendants-appellants.

A. Keith Livingston of Christiansen & Livingston, Greeneville, for plaintiffs-appellees.

TOMLIN, Presiding Judge, Western Section.

Defendants, Frank M. Orwige and wife (hereafter "defendants"), appeal from an order of the Greene County Chancery Court enjoining them from maintaining a "mobile home" on their property in violation of a restrictive covenant applicable to the subdivision in which their property was located and at the same time ordering the structure to be removed. The determinative issue in this case is whether the chancellor was in error in finding that the defendants' structure was a "mobile home" as defined in T.C.A. § 55-1-105. We hold that he was not and affirm.

By stipulation of the parties it was agreed that plaintiffs and defendants own property in a subdivision called "Riverview Subdivision" and that the subdivision is subject to restrictive covenants prohibiting the use of trailers or mobile homes on the premises. Defendants purchased a 1985 model Spring Hill "structure" from Don Bryant Mobile Homes. The structure was built by Fleetwood Enterprises. At the time of the purchase defendants were aware that the property was restricted insofar as mobile homes were concerned. They discussed these restrictions with the owner of the sales lot, who advised them that the structure was not a mobile home, but rather was a manufactured or factory-built home.

The structure consisted of two units, each fifty-two feet long and approximately thirteen feet wide. Each unit was pulled by a tractor-truck over the public highways to defendants' lot in Riverview Subdivision. Concrete footers were poured at the site for the foundation. Anchors were imbedded in the footers on which were built pillars of concrete blocks. The two units were bolted together and secured to the anchors by means of metal straps. The assembled structure was constructed on four I-beams running the length of the units. The space between the foundation or footing and the structure was subsequently enclosed on three sides by an additional concrete block foundation.

Following installation the wheels, axles and tongues were removed from each of the units and returned to the manufacturer. These could be reattached to the units, which could then be separated and towed away from defendants' lot by a short-bed tractor-truck in the same manner in which they had been brought to defendants' property. A certificate of title had been issued for the structure and each unit of the structure had been given a vehicle identification number.

At the time the units were delivered to defendants' property two of the plaintiffs expressed their concern to defendants that the structure was in violation of the restrictive covenant. Defendants contended at that time that the structure was not a mobile home but a "factory-built" home to which the restrictive covenant did not apply.

"Mobile home" is defined in T.C.A. § 55-1-105(d) as follows:

(d) The words "mobile home or house trailer" mean any vehicle or conveyance, not self propelled, designed for travel upon the public highways, and designed for use as a residence, office, apartment, storehouse, warehouse, or any other similar purpose.

In addition to hearing testimony of the parties and representatives of the dealership that sold the structure to defendants, the chancellor had before him photographs of the structure in various stages of installation as well as in a completed state. Finding the structure in violation of the restrictive covenant, the chancellor stated:

Defendants' dwelling is no less a trailer or mobile home merely because the wheels were removed after installation. It is obviously a "double-wide" mobile home, erected on concrete blocks and capable of movement upon re-attachment of the wheels and removal of the con-

crete blocks. TCA 55–1–105, which define [sic] "trailer" and "mobile home" does not apply beyond its context. It does not serve to convert this mobile home to a "modular home."

In support of their contention that the structure is a "modular home" rather than a "mobile home," defendants rely heavily on the manner in which their structure was constructed, when compared to a conventional mobile home. It was pointed out that defendants' structure was made with wooden studs and roof trusses, an asphalt shingle roof, and a plywood subfloor with exterior masonite siding. As we shall see from the following authorities, this is a distinction without a difference.

In our opinion the evidence does not preponderate against the finding of the chancellor that the structure erected on defendants' lot was a "mobile home." The specific question of what is a mobile home when considered in relation to zoning laws or restrictive covenants has not been decided in this state. Defendants rely heavily upon *Associates Capital Corp. v. Cookeville Production Credit Ass'n*, 569 S.W.2d 474 (Tenn.App.1978). The Court held in that case that a structure strikingly similar to the one in the case under consideration was not a "trailer" or a "mobile home" as defined by T.C.A. § 55–1–105.

*Associates Capital*, however, was limited substantially in scope by the opinion written by Judge Drowota, now Justice Drowota, and has no real application to the issue before us. *Associates Capital* begins by stating: "The issue in this case is whether a 12′ × 65′ "mobile home" that has had its wheels removed and has been affixed to realty is subject to the certificate of title provisions for motor vehicles under chapters 1 and 3 of Title 59 of Tennessee Code Annotated." *Id.* at 475. In *Associates Capital* there was a contest over collateral by two lenders, the collateral being a mobile home that had been affixed to realty. The first recorded instrument was a deed of trust executed in favor of a lender. The second recorded instrument was a security agreement and note by which the defendants therein warranted the collateral—the mobile home—to be free of liens and encumbrances. The lender had its name entered as "first lien holder" on the motor vehicle certificate of title issued by the Department of Revenue.

Before either security instrument was signed by the defendants, the mobile home had been delivered to the property, its wheels and axles removed, the metal underpinning running from the bottom of the unit to the ground had been installed, concrete steps had been built up to the front door, and the unit had been connected to electricity. Adjacent to the unit a concrete block building housed the water well, pump and central air conditioning system. The unit had also been connected to a water supply in a septic tank.

The court held that at the time the deed of trust was both executed and recorded and the security agreement was executed and the encumbrance noted on the certificate of title, the unit did not qualify as a "mobile home" under the definition found in the statute, stating:

The quoted phrase necessarily implies that a "mobile home" under the statute is either one that is in a condition to act as a conveyance over the public highways or one that may, with a relatively reasonable amount of effort, be reconverted into such a condition. The ... home in the instant case does not meet that description.

*Id.* at 477.

Having so held, the court then specifically acknowledged that what might be called a "mobile home" under one set of circumstances might not be called a "mobile home" under another, and that it intended to restrict and limit its holding, stating:

We recognize that the concept of a "mobile home" is broad and variable. It is capable of embracing everything from the small, car-drawn trailer to today's large prefabricated or modular house. It can encompass anything that can be fairly included in that range of items that partake of some of the attributes of both a vehicle and a building. The definition of a "mobile home" for legal purposes will vary according to the circumstances,

that is, not only according to the nature and surroundings of the vehicle or building itself but also according to the purpose and context of the legal definition. For example, since real estate tax law and zoning law have different purposes and rationales behind them, the group of items included as "mobile homes" under the definition of one might differ from those included under the other. We wish it to be clear that, in the instant case, we have simply held on the facts before us that a particular home was not "designed for travel upon the public highways" under T.C.A. § 59–105(d) and consequently not subject to the certificate of title provisions of chapters 1 and 3 of Title 59, which deals with the certification and registration of motor vehicles.

*Id.* at 479.

Clearly, the issue in *Associates Capital* is not the same issue now before this Court. Fortunately, this issue has been litigated in many jurisdictions. While the decisions have not been uniform there distinctly is a majority view and a minority view. In our opinion the case best expressing the majority view, which we now adopt, is that of *Brownfield Subdivision, Inc. v. McKee*, 61 Ill.2d 168, 334 N.E.2d 131 (1975). The facts are strikingly similar to the case at bar. The defendants purchased a structure and lot in a subdivision that had this restrictive covenant. The trial court found that the structure in question was a mobile home of a type that was prohibited by a restrictive covenant in a subdivision. The restrictive covenant stated in part that "[n]o structure of a temporary character, trailer, ... or garage shall be used on any lot at any time, as a residence, either temporarily or permanently...." *Id.*, 334 N.E.2d at 133.

The structure purchased by defendants was twenty-four feet wide and fifty-two feet long and defendants received a certificate of title to the structure. It was manufactured in two separate units, each built upon detachable undercarriages consisting of springs, axles, wheels and hitches, which were designed to be removed at the location where the structure was to be installed. The structure was placed on stacks of concrete blocks on top of a concrete foundation on defendants' lot. Steel I-beams were placed on top of the stacks. When the two units were delivered to the lot they were lowered onto the I-beams. The detachable running gears were removed after the two units had been connected together. The ends of the I-beams and the stacks of concrete blocks were cemented together. A perimeter wall of concrete blocks was also cemented to the foundation.

There was testimony from mobile home distributors that the structure was a sectional home and not a double-wide mobile home. They offered testimony that the defendants' structure was a permanent single house and not a mobile home. One distinction sought to be drawn by defendants' testimony was that the running gear of a mobile home was designed to be a permanent part of the unit, while the running gear of a sectional home was designed to be detached—removed from the unit when it was placed on a foundation. Defendants also contended that if the structure was a mobile home then it became a permanent structure when it was placed on the foundation.

The Illinois Supreme Court rejected defendants' contention. Considering the thoroughness of that court's analysis we quote at length from *Brownfield:*

There is authority that modular and sectional homes are considered to be in the mobile-home category. B. Hodes and G. Roberson, The Law of Mobile Homes 4 (3d ed. 1974) states:

"The mobile home is fully equipped and furnished by the manufacturer, and at the time of purchase is ready for immediate occupancy. The manufacturers of the modern mobile home have efficiently utilized between 720 and 1,440 square feet of living space, into which they have comfortably fitted every type of modern convenience, equipment, and facility found in a city apartment or ranch-style suburban home. Units which are expandable after location by means of a specially manufactured extension may increase

the width of the living room and/or bedroom areas to 20 or 24 feet.

Definitions used by manufacturers of the various types of housing units and most state and federal agencies in the mobile home category are:

\* \* \* \* \* \*

4. A *Modular Unit* is a factory fabricated transportable building unit designed to be used by itself or to be incorporated with similar units at a building site into a modular structure to be used for residential, commercial, educational or industrial purposes.

5. A *Sectional Home* is a dwelling made of two or more modular units factory fabricated and transported to the home site where they are put on a foundation and joined to make a single house."

We consider the structure here must be deemed to be within the prohibitory language of the covenant, "no structure of a temporary character, trailer \* \* \*."

It was advertised as a double-wide mobile home in the installment contract under which it was purchased. Photographs in evidence show it to have the superstructure and appearance of a mobile home. In Hodes and Roberson, The Law of Mobile Homes, which we have cited, it is said that sectional homes are regarded as within the mobile-homes category. There was a concrete foundation here but the structure was in no way attached to it or to the three I-beams on which the structure simply rested. The structure can be transported to another location after the two sections have been separated and the removable undercarriages reattached to the bottoms of the sections. One of the exhibits (an article from a trade journal) attached to the defendants' brief in this court refers to a modular unit's portability as a difference from and an advantage over the conventional home.

The majority of courts considering the question have held that removing the wheels or running gear of a mobile home and placing it on a permanent foundation does not convert the home into a perma-

nent structure. In addition to *Timmerman v. Gabriel* [ (1970), 155 Mont. 294, 470 P.2d 528] and *Town of Manchester v. Phillips* [ (1962), 343 Mass. 591, 180 N.E.2d 333], which we described above, such holdings include: *Town of Brewster v. Sherman* (1962), 343 Mass. 598, 180 N.E.2d 338; *Town of Greenland v. Hussey* (1970), 110 N.H. 269, 266 A.2d 122; *Bullock v. Kattner* (Tex.Civ.App.1973), 502 S.W.2d 828; *Jones v. Beiber* (1960) 251 Iowa 969, 103 N.W.2d 364. See also *City of Astoria v. Nothwang* (1960), 221 Or. 452, 351 P.2d 688.

There is some contrary authority: *Anstine v. Zoning Board of Adjustment* (1963), 411 Pa. 33, 190 A.2d 712; *Lescault v. Zoning Board of Review* (1960), 91 R.I. 277, 162 A.2d 807; *In re Willey* (1958), 120 Vt. 359, 140 A.2d 11. However, we consider the position taken in the majority of holdings is to be preferred.

*Id.* at 134–35.

The contention that the structure had taken on a character of permanency and was not a mobile home was considered and disposed of in another restrictive covenant case styled *Farnam v. Evans,* 306 N.W.2d 228, 230 (S.D.1981), wherein the Supreme Court stated:

Appellants' [sic] allege that the removal of the apparatus needed for movement, such as the wheels and towing hitch, and the placing of the dwelling upon concrete blocks and pads changes the classification of a mobile home. We conclude that it does not.

This argument has been advanced in many other jurisdictions. The substantial weight of authority has held that merely removing the means of ready mobility does not change the dwelling from being classified as a mobile home. *DeLaurentis v. Vainio,* 169 Mont. 520, 549 P.2d 461 (1976); *Timmerman v. Gabriel,* 155 Mont. 294, 470 P.2d 528 (1970); *Bullock v. Kattner,* 502 S.W.2d 828 (Tex.Civ. App.1973); *Smith v. Bowers,* 463 S.W.2d 222 (Tex.Civ.App.1970).

*See also Billings v. Shrewsbury,* 294 S.E.2d 267 (W.Va.1982).

In light of the above authorities, we have no difficulty in holding that the defendants' structure is a "mobile home," notwithstanding that it might be a "double-wide" mobile home and notwithstanding the fact that it may be constructed of different materials than many mobile homes. It has no more of an air of permanency than the mobile homes in the cases cited above. It is just as capable of being separated and transported to and reassembled at another lot as those units in the cases cited above.

For the foregoing reasons, the decree of the chancellor holding the defendants' structure to be a mobile home and ordering its removal is affirmed. Costs in this cause are taxed to defendants for which execution may issue, if necessary.

FARMER, J., concurs.

CRAWFORD, J., dissents with separate opinion.

CRAWFORD, Judge, dissenting.

I must respectfully dissent from the opinion of my brothers. I agree with the majority's statement of the facts. I also agree that the specific question of what is a mobile home when considered in relation to restrictive covenants has not been decided in this state and that there is a split of authority on this issue nationwide. Beyond this point we part company.

I quote the particular restriction which plaintiffs seek to enforce:

"RESTRICTIONS: Restricted against commercial use. No trailers or mobile homes permitted. Residences shall be not less than 1,200 square feet. Restricted against anything that would be a nuisance. Land can be used for farming, including farm buildings."

We must not lose sight of the fact that we are dealing with a restriction or restrictive covenant on real estate. Such restrictions are to be enforced according to the express intent of the parties, but being in derogation of the right of unrestricted use of property will be strictly construed and will not be extended by implication to anything not clearly and expressly prohibited by their plain terms. *Turnley v. Garfinkel*, 211 Tenn. 125, 362 S.W.2d 921 (1962).

In *Parks v. Richardson*, 567 S.W.2d 465 (Tenn.App.1977), Judge Drowota, now Justice Drowota of our Supreme Court, succinctly set out the controlling law:

Plaintiffs correctly point to a couple of well established rules of law and construction which dictate the approach that must be taken in this case. The first is that a restrictive covenant will be given a fair and reasonable meaning according to the intent of the parties, which may be determined with reference both to the language of the covenant and to the circumstances surrounding its making. *White v. Gulf Refining Co.*, 156 Tenn. [(3 Smith)] 474, 2 S.W.2d 414 (1928); *Waller v. Thomas*, 545 S.W.2d 745 (Tenn. App.1976); *Hamilton v. Broyles*, 57 Tenn.App. 116, 415 S.W.2d 352 (1966). The second is that a restrictive covenant, being in derogation of the free use and enjoyment of property, will be strictly construed against the restriction and in favor of the reasonable use of the property, so that only uses clearly prohibited will be held precluded by such a covenant. *Shea v. Sargent*, 499 S.W.2d 871 (Tenn.1973); *Lowe v. Wilson*, 194 Tenn. 267, 250 S.W.2d 366 (1952). Thus, any ambiguity in the terms of the covenant or intent of the parties will be resolved against the restriction. *Shea v. Sargent, supra; Waller v. Thomas, supra.* We point out in particular that this is the applicable rule of construction, rather than the rule that ambiguous contract provisions are construed against the party who wrote them, a rule that defendants contend should be applied here. The latter is a valid rule of construction applied in contract cases in Tennessee. See e.g., *Hanover Insurance Co. v. Haney*, 221 Tenn. 148, 425 S.W.2d 590 (1968) (insurance policy). In cases involving covenants restricting the use of real property, however, the rule of strict construction against the restriction is well established as the one to be applied.

*Id.* at 467–68.

Judge Drowota noted that no clear evidence was introduced regarding the specif-

ic meaning intended by the parties in the use of the words of the restriction and that the words themselves are the primary evidence of meaning.

In the case at bar, like *Parks*, the record reveals no evidence of the specific meaning intended by the use of the words "mobile home." Does the use of the words "mobile home" denote mobility in getting the home to the particular parcel of real estate or does it mean to remain instantly mobile while resting on the real estate? The particular structure involved came to the real estate in two pieces, and certainly each piece was mobile enough to allow it to arrive at its destination. However, it is clear that each piece constituted only one-half a home or house. Furthermore, the axle and wheels, the means by which these two separate half houses were brought to the real estate, were not purchased as a part of the structures and were merely used to move the structures to the lot. It seems to me that the majority would have difficulty drawing the line of when something would be mobile or not mobile. Is half a house mobile, but one fourth of a house is mobile? Is one fourth of a house mobile and one eighth of a house immobile? Are the trusses mobile or immobile if they are moved in one piece to the lot? In any event, the facts of the instant case establish without controversy that the particular structure we are dealing with in this case was not one single self contained structure, but came to the lot in separate pieces. Once it arrived it was placed on a foundation, and all the devices which allowed the structure to be moved were detached and returned to the manufacturer. These devices amounted to nothing more than a platform upon which to move the structure. Would the majority have decided differently had the structure of the house been delivered upon a flat bed truck? As it existed on the lot the structure was no different from any other house. Perhaps it might be somewhat easier to arrange for its removal from the lot, but that should not be the criteria for establishing what is a mobile home within the meaning of the restrictive covenant. In my opinion the plain meaning of the words "mobile home"

requires us to say that a mobile home is one that *is mobile* and not one that *can be made mobile*. If the restriction in question is construed to mean one that can be made mobile, then almost any residential structure can qualify as a mobile home by using jacks and attaching axles and wheels in the same way the home in this case can be moved. Strictly construing the restriction as written we should hold that the structure involved in the case before us is not a "mobile home" within the meaning of the restriction.

I am not unmindful that the majority opinion has followed what is probably considered the majority view in this country. However, it should be noted that the cases cited in the majority opinion do not mention the rule of strict construction of real estate restriction. I am not inclined to say that the majority rule should control our decision in a case involving restrictive covenants on Tennessee real estate. Our Supreme Court noted in *Shea v. Sargent*, 499 S.W.2d 871 (Tenn.1973), that although some states do not strictly construe restrictive covenants because they are said to protect the land owner and the public rather than restrict the use of the land, the law in Tennessee is otherwise. The court said:

> The plaintiff cites cases, notably *Wallace v. St. Clair*, 147 W.Va. 377, 127 S.E.2d 742 (1962), which represent the so-called "modern trend." Under these opinions restrictive covenants are not strictly construed because they are said to protect the landowner and the public rather than restrict the use of the land. The law in Tennessee, however, is otherwise. The general rule in our courts is that restrictive covenants, those which restrict the use of land, must be strictly construed. This Court has recognized the protective aspects of such covenants, but has concluded that they are restrictive in nature.

*Id.* at 872–873.

In this case, the restriction is "No trailers or mobile homes permitted." Under our law we are required to give the words used their plain, usual and ordinary meaning in strictly construing a restriction on the free use of the property. The struc-

ture in the present case is resting on a foundation and in order for it to be moved must be cut in half and have axles and wheels installed. I find it difficult, if not impossible, to hold that such a structure under the restriction in question is a mobile home. This is not to say, of course, that a restriction could not be written to cover a structure such as we have in this case.

Finally, I am compelled to take issue with the majority's treatment of *Associates Capital Corporation v. Cookville Production Credit Ass'n.,* 569 S.W.2d 474 (Tenn. App.1978). In *Associates Capital* the issue before the court is stated as "whether a 12′ × 65′ 'mobile home' that has had its wheels removed and has been affixed to realty is subject to the certificate of title provisions for motor vehicles under chapters 1 and 3 of Title 59 of Tennessee Code Annotated." *Id.* at 475.

In the case before us, the majority opinion states: "The determinative issue in this case is whether the chancellor was in error in finding that the defendants' structure was a 'mobile home' as defined in T.C.A. § 55–1–105." In my view the issue as stated by the majority and the issue in *Associates Capital* are essentially the same although the majority opinion later states, "Clearly, the issue in *Associates Capital* is not the same issue now before this Court." The issue of whether the structure is a mobile home within the meaning of T.C.A. § 55–1–105 is not the determinative issue. If it were the determinative issue, then on that basis alone the holding of *Associates Capital* would require a reversal of the chancellor's ruling since the court in *Associates Capital* found that a 12′ × 65′ single unit set on a foundation was not a mobile home within the meaning of the statute. The holding of *Associates Capital* is limited to a definition of "mobile home" under the statutes involving vehicle title certificates and registration. Judge Drowota made it quite clear that a definition under the statute may have no application to a controversy such as involved in the instant case when he said:

> The definition of a "mobile home" for legal purposes will vary according to the circumstances, that is, not only according to the nature and surroundings of the vehicle or building itself but also according to the purpose and context of the legal definition. For example, since real estate tax law and zoning law have different purposes and rationales behind them, the group of items included as "mobile homes" under the definition of one might differ from those included under the other.

*Id.* at 479.

Based on the uncontroverted facts in this record I would hold that the defendants' house is not a "mobile home" within the meaning of the restriction and would reverse the judgment of the trial court.