IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 17, 2005 Session

## JAMES L. WILLIAMS, ET AL. v. JORDAN LEE FOX

**Appeal from the Circuit Court for Sevier County**
**No. 2004-0577-III     Rex Henry Ogle, Judge**

**No. E2004-03027-COA-R3-CV  - FILED MARCH 20, 2006**

James L. Williams, Brenda G. Williams, Charles Roberson, and Marjorie Roberson ("Plaintiffs") sued Jordan Lee Fox ("Defendant") claiming, in part, that Defendant was constructing a mobile home/modular home in the Oma Lee Williams subdivision in violation of the subdivision restrictions.  Plaintiffs sought, among other things, a restraining order prohibiting Defendant from constructing and completing the mobile home/modular home.  The case proceeded to trial.  The Trial Court entered an order finding and holding, *inter alia*, that the structure in question is a modular home and that under existing case law Defendant was in violation of the subdivision restrictions. The Trial Court awarded Plaintiffs a permanent injunction and ordered Defendant to remove the structure.  Defendant appeals to this Court claiming, in part, that the existing case law upon which the Trial Court based its decision dealt with double wide or manufactured homes, not modular homes.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and SHARON G. LEE, J.J., joined.

Brian T. Mansfield, Sevierville, Tennessee for the Appellant, Jordan Lee Fox.

Charles S. Sexton, Sevierville, Tennessee for the Appellees, James L. Williams and wife, Brenda G. Williams, and Charles Roberson and wife, Marjorie Roberson.

Matthew J. Scanlan, Nashville, Tennessee for Amicus Curie, Tennessee Manufactured Housing Association.

# OPINION

## Background

Plaintiffs and Defendant own lots in the Oma Lee Williams subdivision in Sevier County, Tennessee that are subject to recorded subdivision restrictions, which state, in pertinent part:

1. No temporary building of any kind including mobile homes, tents, or trailers, or the like shall be built or placed on any lot at any time, except that temporary construction contractor's trailers may be placed upon a lot during the time of construction of the permanent improvements on the lot.

\* \* \*

3. No trailer or mobile homes may be erected on any lot in the subdivision at any time.

Defendant had a modular home delivered to his lot in two pieces via truck and began to assemble the modular home. Plaintiffs obtained a temporary restraining order prohibiting Defendant from continuing construction and placement of the modular home on Defendant's lot. Plaintiffs then sought to have their temporary restraining order converted into a permanent injunction.

The bench trial was on October 18, 2004. The Trial Court heard opening statements and then essentially announced that it would accept as true Defendant's evidence as to the characteristics and nature of the home including the factual statements made by Defendant's attorney as to how the home in question was constructed and how it was delivered to Defendant's lot. In his opening statement, Defendant's attorney asserted that Defendant's modular home is completely different from a manufactured home or double-wide and is built to be as good as, or better than, a home built on-site or what also is known as a stick-built home, but simply is constructed in a controlled environment rather than on-site. Defendant's attorney admitted that the home was fabricated off-site and transported to Defendant's lot via trucks. Defendant's attorney further asserted that the modular home is not built on a permanent chassis, which makes it different from manufactured homes and mobile homes as defined in Tenn. Code Ann. §§ 47-9-102, 55-1-105, and 68-126-202. Defendant's attorney asserted that the existing case law in Tennessee concerning restrictions of this type dealt with double-wide homes that had axles, wheels, tongue, title, and license, and not with modular homes.

The Trial Court allowed both sides to make an offer of proof of further evidence and both sides did so. Defendant submitted the plans for the modular home, the Oma Lee Williams subdivision restrictions, and six sets of subdivision restrictions for other subdivisions that were recorded around the same time as the Oma Lee Williams restrictions. Plaintiffs submitted two

photographs showing the pieces of the modular home on Defendant's lot. The Trial Court in rendering its decision considered the additional evidence offered by Defendant in its offer of proof as evidence in the case.

The Trial Court entered its order on November 23, 2004, finding and holding, *inter alia*:

> The Court heard from respective counsel for Plaintiffs and Defendant, considered all of the arguments of counsel, the stipulated facts, and further considered the documents tendered by the Defendant (to be tendered as post hearing documents) and the entire record, the Court makes the following findings:
>
> 1. The Court finds that the structure in question is a modular home.
>
> 2. The Court finds that the modular home was built by Redman Homes according to standards set by the State Fire Marshall's Office in the Codes Enforcement Section of the Department of Commerce and Insurance according to the plans submitted in the post-hearing filings and having those construction elements as represented by Defendant's counsel at the hearing.
>
> 3. That the home was delivered to the site in sections by a carrier with a hauling system as reflected in the photographs (stipulated exhibits) filed post-hearing.
>
> 4. That the Court believes the **Apollo Shores Community and Maintenance, Inc. v. Lynn,** Tennessee Court of Appeals, June 21, 2000, E-199-00946-COA-R3-CV is the controlling authority under the facts and circumstances before this Court. That opinion states that "the manner of construction between a 'modular home' and a 'mobile home' was a difference <u>without a distinction</u>."
>
> * * *
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiffs are entitled to a temporary injunction and a mandatory injunction against the Defendant requiring the Defendant, Jordan Lee Fox, to remove this structure within thirty (30) days after the Order becomes final.

Defendant appeals the Trial Court's November 23, 2004 order to this Court.

### Discussion

Although not stated exactly as such, Defendant raises one issue on appeal: whether the Trial Court erred in holding that Defendant's modular home violated the Oma Lee Williams subdivision restrictions.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Defendant argues, in part, that the Trial Court's reliance upon this Court's decision in *Apollo Shores Community and Maintenance v. Lynn* is misplaced because, Defendant asserts, *Apollo Shores* and the cases relied upon in that Opinion dealt with double-wide or manufactured homes and not modular homes. *Apollo Shores Cmty. & Maint. v. Lynn,* No. E-1999-00946, COA-R3-CV, 2000 Tenn. App. LEXIS 403 (Tenn. Ct. App. June 21, 2000), *no appl. perm. appeal filed.* Defendant asserts that his structure is a modular home which differs from double-wide or manufactured homes both in fact and in its treatment under Tennessee law.

Defendant argues that the appellate courts in Tennessee never have addressed a case actually involving a modular home. In support of this position, Defendant's appellate brief asserts: "The semantical problem arose in Albert v. Orwige when the defendant attempted to describe the disputed structure as a "modular home" (when it was a double-wide) in order to attempt to distinguish it from a "mobile home" prohibited under the subject restrictions." Defendant argues that the appellate courts in Tennessee never have addressed a case "involving a *true* modular home built in conformity with and regulated under the Tennessee Modular Building Act, and neither titled nor containing the other 'mobile' characteristics of double-wide manufactured homes." Defendant asserts that "[t]rue modular homes are built for permanent installation, with 'modules' or components completed at the factory and then transported to the site.…[and that the] materials and construction are on par or arguably better than site built homes."

Defendant asserts that his modular home differs factually in a significant manner from double-wide or manufactured homes. At trial, Defendant asserted that his modular home is built to be as good as, or better than, a stick-built home, but merely is constructed in a controlled environment rather than at the site. Defendant asserted that his modular home differs from a manufactured home or a mobile home because the modular home is not built on a permanent chassis. However, Defendant admitted that his modular home was fabricated off-site and transported to Defendant's lot via trucks. Defendant submitted the plans for the modular home and asserts in his appellate brief that the plans show that the modular home "is constructed with 2 x 6 exterior framing; 2 x 4 interior framing; truss floor systems with plywood flooring; flat interior ceilings; dry wall interior walls; shingled roof, R38 roof insulation and R19 wall and floor insulation …." While the plans in the record may indeed show these features, the record is devoid of any evidence that would show how these features compare with the framing, flooring, ceilings, walls, roof, etc. used in a manufactured home, a mobile home, or a site-built home. There is nothing in the record with which to contrast and compare Defendant's modular home plans. Nor is there any proof in the record that would show this Court the import of the facts detailed in the modular home plans.

The facts contained in the record on appeal are similar to, but not identical to, the facts contained in the *Albert v. Orwige* case about which Defendant complains. *Albert v. Orwige*, 731 S.W.2d 63 (Tenn. Ct. App. 1987). The *Albert* Court stated that the structure at issue in that case:

> consisted of two units, each fifty-two feet long and approximately thirteen feet wide. Each unit was pulled by a tractor-truck over the public highways to defendants' lot in Riverview Subdivision. Concrete footers were poured at the site for the foundation. Anchors were imbedded in the footers on which were built pillars of concrete blocks. The two units were bolted together and secured to the anchors by means of metal straps. The assembled structure was constructed on four I-beams running the length of the units. The space between the foundation or footing and the structure was subsequently enclosed on three sides by an additional concrete block foundation.
>
> * * *
>
> In support of their contention that the structure is a "modular home" rather than a "mobile home," defendants rely heavily on the manner in which their structure was constructed, when compared to a conventional mobile home. It was pointed out that defendants' structure was made with wooden studs and roof trusses, an asphalt shingle roof, and a plywood subfloor with exterior masonite siding. As we shall see from the following authorities, this is a distinction without a difference.

*Albert*, 731 S.W.2d at 64-65. Although Defendant points out that his modular home is not constructed on I-beams, we find this difference of no more significance than the similarities between Defendant's structure and the structure in *Albert*. As in *Albert*, Defendant's home consisted of two units that were brought to the site by trucks. *Id*. at 64. In addition, although Defendant argues that the construction elements in his modular home differ from that of a manufactured home, the construction elements as introduced into the record show that just as in *Albert*, Defendant's home had wooden framing, a plywood subfloor, and a shingle roof. *Id*. at 65. As such, the construction elements that Defendant argues provide for a significant factual difference between his modular home and a manufactured home do not support his argument.

We also note that the facts in the record regarding Defendant's modular home while not identical are similar not only to the facts regarding the structure in *Albert*, but also to the facts regarding manufactured homes in other cases including *Beacon Hills Homeowners Ass'n, Inc. v. Palmer Props., Inc.*, which stated:

> The structure here consisted of two units. Each unit was pulled by a tractor-truck over the public highways to defendants' lot in Beacon Hills Subdivision. Concrete footers were poured or proposed to be poured at the site for the foundation. The two units were to be attached together and secured to the foundation. The assembled structure was constructed on four I-beams running the length of the units. The space

between the foundation or footing and the structure was to be enclosed. The only difference between the case under consideration and *Albert* is that, here, the appellant proposed to add a garage, porch and use brick on a large portion of the exterior of the structure.

*Beacon Hills Homeowners Ass'n, Inc. v. Palmer Props., Inc.*, 911 S.W.2d 736, 738 (Tenn. Ct. App. 1995).

As this Court reaffirmed in *Apollo Shores*: "The Court [in *Albert v. Orwige*] noted that the manner of construction between a 'modular home' and a 'mobile home' was a difference without a distinction. We agree that the same reasoning can be applied to a 'manufactured home' and a 'mobile home.'" *Apollo Shores*, 2000 Tenn. App. LEXIS 403 at *9.

Defendant also argues that his modular home should be treated differently than double-wide and manufactured homes have been treated under Tennessee case law because our Legislature has enacted statutes that define these terms differently. Defendant cites to the Tennessee Modular Building Act, which defines the term 'modular building unit' as:

> (6) "Modular building unit" means a structural unit, or preassembled component unit including the necessary electrical, plumbing, heating, ventilating and other service systems, manufactured off-site and transported to the point of use for installation or erection, with or without other specified components, as a finished building and not designed for ready removal to another site. "Modular building unit" does not apply to temporary structures used exclusively for construction purposes or nonresidential farm buildings.

Tenn. Code Ann. § 68-126-303(6) (2001). Defendant cites the Tennessee Motor Vehicle Title and Registration Law, which defines the terms 'manufactured home' and 'mobile home' as:

> (1) "Manufactured home" means any structure, transportable in one (1) or more sections, which, in the traveling mode, is eight (8) or more body-feet in width or forty (40) or more body-feet in length, or when erected on site, is three hundred twenty (320) or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air-conditioning and electrical systems contained therein.…
>
> (2) "Mobile home or house trailer" means any vehicle or conveyance, not self-propelled, designed for travel upon the public highways, and designed for use as a residence, office, apartment, storehouse, warehouse, or any other similar purpose. "Mobile home or house trailer" shall include any "manufactured home" as defined in subdivision (5);

Tenn. Code Ann. § 55-1-105 (2004)[1].

These statutes as relied upon by Defendant, however, do not apply to the issue involved in this case. The Tennessee Modular Building Act was enacted:

(b) Because of the nature of the construction of modular building units, which arrive at the site of installation with some or all of the electrical, mechanical, plumbing and other systems already built into the unit and not able to be inspected at the site without disassembly or destruction, it is the purpose of this part to provide for the inspection of modular building units for compliance with building codes at the place of manufacture.

Tenn. Code Ann. § 68-126-302(b) (2001). Thus, the Tennessee Modular Building Act addresses and applies to "inspection of modular building units for compliance with building codes …," and does not address the issue of defining the term 'modular building unit' for any other purpose. *Id.* In addition, the definitions of 'manufactured home' and 'mobile home' that Defendant cites appear within the Tennessee Motor Vehicle Title and Registration Law and likewise are not intended to address the issue of defining these terms for purposes of restrictive covenants. As such, Defendant's reliance upon the differences in these definitions is misplaced, particularly in light of the existing case law as discussed above.

Defendant also argues that the Oma Lee Williams subdivision restrictions do not specifically state that modular homes are prohibited and adding modular homes to the restrictions would impermissibly broaden them. As this Court stated in *Apollo Shores*:

Generally speaking, restrictions on the free use of real property are not favored and will be strictly construed. *Hicks v. Cox*, 978 S.W.2d 544, 548 (Tenn. App. 1998); *Beacon Hills v. Palmer Properties, Inc.*, 911 S.W.2d 736, 739. However, the overriding consideration is the intent of the parties. *Hicks*, 978 S.W.2d at 548; *Beacon Hills*, 911 S.W.2d at 739.

*Apollo Shores*, 2000 Tenn. App. LEXIS 403 at *7.

This Court discussed the difficulties inherent with the changing terminology as regards these types of restrictive covenants in *Beacon Hills* stating:

It seems clear that it was the intent of the parties who prepared the restrictive covenants when using the term "trailer" were contemplating a "trailer used as a residence." As the trial court pointed out the use of the term "trailer" is no longer

---

[1] The term 'manufactured home' also is defined in Tenn. Code Ann. § 47-9-102(53) (2001) and Tenn. Code Ann. § 68-126-202(4) (2001). The definitions contained in these two statutes are substantially similar to the definition of 'manufactured home' contained in Tenn. Code Ann. § 55-1-105(1) (2004).

utilized for structures in which people live and even the term "mobile home" seems to be passé.

*Beacon Hills*, 911 S.W.2d at 739.

Defendant argues that the term "modular home" was in use in 1995, when the Oma Lee Williams subdivision restrictions were recorded and, if the intent were to prohibit modular homes then that term should have been used. The problem with this argument is that terms of art and their meanings often change over time. It is impossible for a subdivision restriction to state with certainty every term that may ever be coined for a similar item being prohibited. For this reason, we look to the intent behind the subdivision restrictions. *See Apollo Shores*, 2000 Tenn. App. LEXIS 403 at *7. The subdivision restrictions applicable in this case provide:

> 1. No temporary building of any kind including mobile homes, tents, or trailers, or the like shall be built or placed on any lot at any time, except that temporary construction contractor's trailers may be placed upon a lot during the time of construction of the permanent improvements on the lot.
>
> * * *
>
> 3. No trailer or mobile homes may be erected on any lot in the subdivision at any time.

As discussed above, "the manner of construction between a 'modular home' and a 'mobile home' was a difference without a distinction. We agree that the same reasoning can be applied to a 'manufactured home' and a 'mobile home.'" *Apollo Shores*, 2000 Tenn. App. LEXIS 403 at *9. Whether Defendant's home is called a modular home, a manufactured home, a mobile home, a sectional home, or some other term of art, we find, as did the Trial Court, that the intent of the parties in adopting these restrictive covenants was to prohibit this type of structure from being erected on any lot in the subdivision. We find no error by the Trial Court in its holding that Defendant's structure does violate the Oma Lee Williams subdivision restrictions. We, therefore, affirm the Trial Court's November 23, 2004 order.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Jordan Lee Fox, and his surety.

_____

D. MICHAEL SWINEY, JUDGE