# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 10, 2016 Session

## DENVER NAPIER, ET AL. v. GAIL HOWARD, ET AL.

**Appeal from the Chancery Court for Grainger County**
**No. 2013CH38    Telford E. Forgety, Jr., Chancellor**

_____

### No. E2015-01222-COA-R3-CV-FILED-JULY 25, 2016
_____

Gail Howard purchased at auction a subdivision lot in Grainger County. The deed to Howard's lot, as well as the deeds to the other lots in the subdivision, contains a restrictive covenant prohibiting "single wide mobile homes." Howard converted her lot into a campground with sixteen camper trailer sites for rent. Denver Napier, Sheryl Napier, and Jeffrey Bryant (collectively the plaintiffs), each of whom had purchased a lot in the subdivision, filed a complaint against Howard seeking an injunction enjoining her from using her property as a campground. They based their complaint on the restrictive covenant against "single wide mobile homes." The trial court held that the restrictive covenant prohibited, in the court's words, "camping trailers and/or single wide mobile homes" in the subdivision. Accordingly, the trial court permanently enjoined Howard and all other owners of lots from having, again in the court's words, "camping trailers/single wide mobile homes" on their property. Howard appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

N. Craig Strand and Gina C. Sarli, Knoxville, Tennessee, for the appellant, Gail Howard.

Thomas C. Jessee, Johnson City, Tennessee, for the appellees, Denver Napier, Sheryl Napier, and Jeffrey Bryant.

# OPINION

## I.

At an auction on June 20, 2012, Howard purchased Lot 3 in the Louisa Long Estate subdivision in Grainger County. The deed for each lot in the subdivision contains a restrictive covenant provision. As pertinent to this case, the covenant in Howard's deed included the following language:

> THIS CONVEYANCE is made and accepted subject to . . . the following restrictions: no single wide mobile homes will be permitted[.]

(Capitalization in original.) In the ensuing months, Howard converted her property into a campground. She graded the lot, installed two septic tanks, and set up sixteen separate camper trailer sites, each of which had individual plumbing and electricity hookups. After obtaining a campground permit from the State, Howard began renting out the camper sites on a month-to-month basis.

Each of the plaintiffs started the construction of a home. When they learned that Howard was converting her lot into a campground, they filed this complaint against her. The plaintiffs alleged that Howard was acting in violation of the restriction against the placing of "single wide mobile homes" on the lots. They sought an injunction to prevent Howard from using her property as a "mobile home/camping park." Howard filed a motion for partial summary judgment, contending that "there are no genuine issues of material fact with regard to what constitutes a 'mobile home' in Tennessee." Essentially, Howard argued that a camper trailer did not qualify as a "single wide mobile home" under Tennessee law. The trial court did not rule on Howard's motion; rather, the case proceeded to trial. Following a bench trial, the court held that the placing of camper trailers on Howard's property violated the restrictive covenant against single wide mobile homes. Accordingly, the court permanently enjoined Howard from having camper trailers on her property.

## II.

Howard raises a single issue on appeal. As quoted verbatim from her brief, it is as follows:

> Whether . . . Howard is barred from the free use of having "camper trailers" on her property based on a restrictive

2

covenant against "single-wide mobile homes" when, strictly construing the restrictive covenant, the term "single-wide mobile homes" does not include "camper trailers" based on its ordinary meaning, statutory definitions, and case law.

## III.

Our review is de novo upon the record, with a presumption of correctness as to the trial court's factual determinations, a presumption we must honor unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674 (Tenn. 2005). The trial court's conclusions of law are not accorded such a presumption. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). Our de novo review is subject to the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. *Columbus Med. Servs., LLC v. Thomas*, 308 S.W.3d 368, 383 (Tenn. Ct. App. 2009); *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999).

## IV.

Howard maintains that the restrictive covenant in her deed that bars "single wide mobile homes" must be strictly construed. As she applies that principle to the facts of this case, she concludes that "camper trailers" would not be prohibited. She relies upon well-established principles as announced by the Supreme Court:

> [R]estrictive covenants are not favored in Tennessee because they are in derogation of the right of free use and enjoyment of property. *See Arthur v. Lake Tansi Vill., Inc.*, 590 S.W.2d 923, 927 (Tenn. 1979); *Shea v. Sargent*, 499 S.W.2d 871, 873 (Tenn. 1973). Therefore, such restrictive covenants are strictly construed. *See Arthur*, 590 S.W.2d at 927; *Shea*, 499 S.W.2d at 873-74. Courts refrain from extending a restrictive covenant to any activity not clearly and expressly prohibited by its plain terms. *See Turnley v. Garfinkel*, 362 S.W.2d 921, 923 (Tenn. 1962); *Beacon Hills Homeowners Ass'n, Inc. v. Palmer Props., Inc.*, 911 S.W.2d 736 739 (Tenn. Ct. App. 1995). When the terms of a covenant may be construed more than one way, the courts must resolve any ambiguities against the party seeking to enforce the restriction and in a manner which advances the unrestricted use of the property.

3

See **Hillis v. Powers**, 875 S.W.2d 273, 275-76 (Tenn. Ct. App. 1993); **Parks v. Richardson**, 567 S.W.2d 465, 468 (Tenn. Ct. App. 1977).

**Williams v. Fox**, 219 S.W.3d 319, 324 (Tenn. 2007). Consistent with Supreme Court teaching, we have explained that when construing a restrictive covenant, "the overriding factor is the intent of the parties." **Hicks v. Cox**, 978 S.W.2d 544, 548 (Tenn. Ct. App. 1998) (citing **Beacon Hills**, 911 S.W.2d at 739); *see also* **Benton v. Bush**, 644 S.W.2d 690, 691 (Tenn. Ct. App. 1982) ("[n]otwithstanding the law's unfavorable regard toward restrictive covenants and its strict construction of them, such restrictions, like other contracts, will be enforced according to the . . . intention of the parties"). While interpreting restrictive covenants pertaining to the difference between mobile homes and trailers, "past cases have tended to broadly construe restrictions against 'trailers' and 'mobile homes' on the basis that such a broad construction was consistent 'with the desire of developers to prevent property owners from placing residential units that were constructed off-site onto subdivision lots.' " **Williams**, 219 S.W.3d at 324 (quoting **Hicks**, 978 S.W.2d at 548). In fact, a string of cases dating back to **Albert v. Orwige**, 731 S.W.2d 63 (Tenn. Ct. App. 1987) essentially address the issue now before us and illustrate the broad interpretation given to the terms "trailer" and "mobile home." In each case, this Court was tasked with interpreting a restrictive covenant and determining whether a structure that was not *explicitly* named in the covenant was prohibited.

In **Albert**, we analyzed a restrictive covenant in a subdivision against "trailers or mobile homes." **Id.** at 64. The defendants in that case had been enjoined from maintaining a "manufactured or factory-built home" on their property after the trial court had concluded that it was actually a mobile home. **Id.** The "manufactured or factory-built home" had been "pulled by a tractor-truck over the public highways" to the defendants' lot where it was assembled on top of a concrete foundation. **Id.** Following installation, the "wheels, axles and tongues," which had enabled over-the-road transportation, were removed. **Id.** Relying upon persuasive authority from a number of other jurisdictions, this Court acknowledged that "the removing of wheels or running gear of a mobile home and placing it on a permanent foundation does not convert the home into a permanent structure." **Id.** at 67. As a result, we reasoned that the home had "no more of an air of permanency" than a typical mobile home because it was "just as capable of being separated and transported to and reassembled at another lot." **Id.** at 68. Ultimately, we concluded that the structure still possessed the potential for movement, a characteristic that made it sufficiently temporary in nature to fall under the restriction against "trailers or mobile homes."

4

Two years later, the holding in *Albert* was reaffirmed in *Reese v. Edwards*, No. 22, 1989 WL 51519 (Tenn. Ct. App., filed May 18, 1989). In that case, the defendants assembled a manufactured home on a lot they had purchased in a subdivision that had a restrictive covenant against temporary residences. *Id.* at *1. Specifically, the restrictive covenant stated, "TEMPORARY STRUCTURES: NO STRUCTURE OF A TEMPORARY CHARACTER, TRAILER, BASEMENT, TENT, SHACK, GARAGE, BARN, OR OTHER OUTBUILDING SHALL BE USED IN ANY LOT AY ANY TIME AS A RESIDENCE, EITHER TEMPORARILY OR PERMANENTLY." *Id.* at *2 (capitalization in original). Though the manufactured home was installed on a concrete foundation, anchored to the ground, and the "wheel assembly with an axle attached to the substructure of the home" had been removed, the trial court still ordered the removal of the home. On appeal, we relied upon the rationale in *Albert* in affirming the trial court.

In 1995, we expanded on the holding in *Albert* with our opinion in *Beacon Hills Homeowners Association, Inc. v. Palmer Properties, Inc.* 911 S.W.2d 736 (Tenn. Ct. App. 1995). In that case, the defendant sought to install a manufactured home on a lot in a subdivision subject to the following restrictive covenant: "No structure of a temporary character, trailer, basement, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently." *Id.* at 737. As was the case in both *Albert* and *Reese*, the home was "pulled by a tractor-truck over the public highways," was to be secured to a concrete foundation, and was to have the "wheels, axles and tongues" removed. *Id.* at 738. However, before the defendant could complete assembly, the trial court decided that the manufactured home was a "trailer" and subject to the subdivision's restrictive covenant. On appeal, we noted that, when construing a restrictive covenant, "we are of the opinion that the intent of the parties is controlling." *Id.* at 739. We highlighted the fact that the terms "trailer" and "mobile home" had been used interchangeably in the cases and concluded that the holding in *Albert* was still controlling on this issue. *Id.* As a result, we affirmed the trial court's determination that the manufactured home qualified as a "trailer" under the restrictive covenant. *Id.*

Three years later, in *Hicks v. Cox*, we examined whether a single-wide mobile home would qualify as a "trailer" under a restrictive covenant that prohibited trailers in a subdivision, essentially the inverse of the issue now before us. 978 S.W.2d 544 (Tenn. Ct. App. 1998). In *Hicks*, the defendants sought to place a single-wide mobile home on a lot in a subdivision that had the following restrictive covenant:

> Said property is sold subject to the following restrictions which shall be binding upon the grantee, his successors and assigns . . . (4) *That no tents, shacks, garages, barns, or other*

5

> *outbuildings erected on this tract shall [sic] any structure of a temporary character be used as a residence . . . (6) These restrictions and reservations are made for the benefit of any and all persons who now may own, or who may hereafter own property in the [subdivision], and such persons are specifically given the right to enforce these restrictions and reservations . . . . (8) That no trailers shall be placed on subject property.*

*Id.* at 546 (emphasis and bracketing in original). Though the trial court eventually dismissed the action for reasons that are not pertinent to the issue now before us, on appeal, this Court sought to "ascertain the scope of the restriction against 'trailers.' " *Id.* at 548. After noting that "restrictive covenants against 'trailers' are not unusual in the development and deeding of property," we pointed out the fact that earlier cases had broadly interpreted the terms "mobile home" and "trailer" in a way which was consistent with developers' intention to prohibit such "temporary" structures in their subdivisions. *Id.* Thereafter, we reasoned that the word trailer would "include not only a camping trailer, but also a single-wide mobile home of the variety placed on the defendants' property." *Id.* at 549. In support of this conclusion, we pointed out the prohibition against structures of a "temporary character" that were used "as a residence" before reasoning that "[t]his latter restriction is a further indication that the subject restrictions prohibit the placement of a single-wide mobile home on the defendants' property." *Id.* Finally, we stated that "[u]ntil the Supreme Court holds otherwise, we are constrained to interpret broadly the word 'trailer' in deed or subdivision restrictions, unless other language in the restrictions dictates a narrower interpretation." *Id.*

In 2000, this Court again reviewed a dispute over a restrictive covenant that did not address by name the structure in question in that case. *Apollo Shores Cmty. & Maint., Inc. v. Lynn*, No. E1999-00946-COA-R3-CV, 2000 WL 796126 (Tenn. Ct. App., filed June 21, 2000). Specifically, the restrictive covenant prohibited "[t]he placing of house trailers" on lots in the subdivision. *Id.* at *1. The defendants purchased a "double-wide mobile home" and began installing the unit on their lot. *Id.* The plaintiffs filed a complaint seeking a permanent injunction against the installation of the double-wide mobile home predicated on the subdivision's restrictive covenant. The trial court subsequently issued a memorandum opinion finding that the mobile home was in fact prohibited by the restrictive covenant against "house trailers." *Id.* On appeal, we affirmed the trial court's decision by noting the interchangeable nature of the terms "mobile home" and "trailer." *Id.* at *4.

The Supreme Court has yet to hold against a broad construction of the terms "mobile home" and "trailer." On the contrary, in **Williams v. Fox**, the High Court openly acknowledged how the Court of Appeals had deviated from the general principle that restrictive covenants are to be strictly construed when analyzing restrictions on "mobile homes" and "trailers." 219 S.W.3d at 324. In its opinion, the Supreme Court discussed the cases we have previously mentioned and did not overturn a single one of our holdings, which were all predicated on a broad interpretation of "mobile home" and "trailer." Furthermore, when discussing mobile homes and trailers, the Supreme Court said,

> Both trailers and mobile homes are defined and regulated by statute in a similar manner. A [m]obile home or house trailer is defined as any vehicle or conveyance, not self-propelled, *designed for travel upon the public highways*, and designed for use as a residence[.]
>
>          \*       \*       \*
>
> Additionally, all mobile homes and house trailers are required to be titled as motor vehicles under the Tennessee Motor Vehicle Title and Registration Law. Both these provisions illustrate the temporary and mobile nature of these structures.

*Id.* at 322-23 (internal citations omitted) (emphasis in original). The Supreme Court has subsequently reinforced the view of mobile homes and trailers as short-term and transportable residences by saying, "[t]he very nature of a . . . trailer park containing house trailers and mobile homes give[s] rise to the assumption of transient occupancy[.]" **Smith Cnty. Reg'l Planning Comm'n v. Hiwassee Vill. Mobile Home Park, LLC**, 304 S.W.3d 302, 315 (Tenn. 2010). Moreover, mobile homes and trailers are both built on permanent chassis, thus making them easily capable of being transported elsewhere. **Williams**, 219 S.W.3d at 323. When taking all of these facts into account, it appears to us that a restrictive covenant barring "single wide mobile homes" would evidence a clear intent to prohibit temporary housing from occupying lots in the subdivision. In our view, such a prohibition would naturally include the "camper trailers" at issue in this case, a conclusion further supported by the fact that Howard rents out her camper trailer sites on a month-to-month basis. Accordingly, we conclude the trial court was correct in holding that the restrictive covenant against "single wide mobile homes" would extend to "camper trailers."

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Gail Howard. The case is remanded to the trial court, pursuant to applicable law, for enforcement of the judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE