**James L. WILLIAMS et al.**

v.

**Jordan Lee FOX.**

Supreme Court of Tennessee,
at Knoxville.

Jan. 3, 2007 Session.

March 15, 2007.

Brian T. Mansfield, Sevierville, Tennessee, for the appellant, Jordan Lee Fox.

Charles S. Sexton, Sevierville, Tennessee, for the appellees, James L. Williams, Brenda G. Williams, Charles Roberson, and Marjorie Roberson.

Kurtis J. Winstead, Nashville, Tennessee, for the Amicus Curiae, Tennessee Manufactured Housing Association.

## OPINION

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ. joined.

We granted permission to appeal in this case to determine whether a subdivision's restrictive covenant that specifically prohibited "mobile homes" and "trailers" in-

cludes a restriction on "modular homes." The plaintiffs obtained a temporary injunction against the defendant prohibiting him from erecting a modular home on his property. Following a hearing before the trial court, the plaintiffs were granted a permanent injunction and the defendant was ordered to remove the partially erected structure from his property. The trial court held that the subdivision's restrictive covenant prohibiting mobile homes and trailers extended to include modular homes as well. The Court of Appeals affirmed the injunction. We reverse, holding that "modular homes" are distinct types of structures from "mobile homes" and "trailers" and because the restrictive covenant did not expressly prohibit "modular homes," the courts cannot expand the plain wording of the covenant to include the defendant's modular home.

### Factual Background

The plaintiffs, James L. Williams, Brenda G. Williams, Charles Roberson, and Marjorie Roberson, own lots in the Oma Lee Williams subdivision in Sevier County, Tennessee. The defendant, Jordan Lee Fox, owns a lot in the same subdivision. All of the lots in this subdivision are subject to the following recorded restrictions:

1. No temporary building of any kind including mobile homes, tents, or trailers, or the like shall be built or placed on any lot at any time, except that temporary construction contractor's trailers may by placed upon a lot during the time of construction of the permanent improvements on the lot.

. . . .

3. No trailer or mobile homes may be erected on any lot in the subdivision at any time.

The defendant had a modular home delivered to his lot in two pieces and began to assemble the home. On August 25, 2004, the plaintiffs sought and obtained a temporary restraining order prohibiting the defendant from continuing construction of the house on his property, citing the subdivision's restriction against mobile homes. The plaintiffs then sought to have their temporary restraining order converted into a permanent injunction.

A bench trial was held on October 18, 2004. After hearing opening statements from counsel, the trial court essentially announced that it would accept as true the defendant's evidence as to the characteristics and nature of the home, including the statements made by the defendant's attorney as to how the home in question was constructed and delivered to his lot. The defendant's attorney admitted that the home was fabricated off-site and transported to defendant's property via trucks. He explained, however, that as a modular home, it was not built on a permanent chassis, which makes it different from mobile and manufactured homes as defined in Tennessee Code Annotated sections 47–9–102 (2001), 55–1–105 (2004) and 68–126–202 (2001). He also explained that the structure was built to "site built" standards or better.

The trial court allowed both sides to make an offer of proof of further evidence following the hearing, and both parties did so. The defendant submitted the plans for his modular home, the Oma Lee Williams subdivision restrictions, and six sets of restrictive covenants for other subdivisions that were recorded around the same time as the Oma Lee Williams restrictions. The plaintiffs submitted two photographs showing the sections of the modular home on the defendant's lot.

The trial court entered its order on November 23, 2004, in favor of the plaintiffs. The court found and held as follows:

1. The Court finds that the structure in question is a modular home.

2. The Court finds that the modular home was built by Redman Homes according to standards set by the State Fire Marshall's Office in the Codes Enforcement Section of the Department of Commerce and Insurance according to the plans submitted in the post-hearing filings and having those construction elements as represented by Defendant's counsel at the hearing.

3. That the home was delivered to the site in sections by a carrier with a hauling system as reflected in the photographs (stipulated exhibits) filed post-hearing.

4. That the Court believes [*Apollo Shores Cmty. & Maint., Inc. v. Lynn*, No. E–199–00946–COA–R3–CV, 2000 WL 796126 (Tenn.Ct.App. June 21, 2000) ], is the controlling authority under the facts and circumstances before this Court. That opinion states that "the manner of construction between a 'modular home' and a 'mobile home' was a difference *without a distinction.*"

. . . .

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiffs are entitled to a temporary injunction and a mandatory injunction against the Defendant requiring the Defendant, Jordan Lee Fox, to remove this structure within thirty (30) days after the Order becomes final.

The Court of Appeals affirmed the decision of the trial court, stating:

> Whether Defendant's home is called a modular home, a manufactured home, a mobile home, a sectional home, or some other term of art, we find, as did the Trial Court, that the intent of the parties in adopting these restrictive covenants was to prohibit this type of structure from being erected on any lot in the subdivision.

We granted the defendant's application for permission to appeal to determine whether a modular home violates the subdivision's restriction against mobile homes.

### Standard of Review

■ Our review is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings unless the evidence preponderates against those findings. Tenn. R.App. P. 13(d). The trial court's conclusions of law, however, are accorded no such presumption. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993).

### Analysis

■ The Oma Lee Williams subdivision restricts the building or placement of "temporary building[s] of any kind including mobile homes, tents, or trailers, or the like." The trial court found, and the parties do not dispute, that the structure delivered to the defendant's lot is a "modular home." The question is, therefore, whether a "modular home" falls under the prohibition of "mobile homes" and "trailers" in the context of the Oma Lee Williams subdivision restrictive covenant.

Both trailers and mobile homes are defined and regulated by statute in a similar manner. A "[m]obile home or house trailer" is defined as "any vehicle or conveyance, not self-propelled, *designed for travel upon the public highways,* and designed for use as a residence. . . . 'Mobile home or house trailer' shall include any 'manufactured home'. . . ." Tenn.Code Ann. § 55–1–105(2) (2004) (emphasis added). A "manufactured home" is defined as:

> [A]ny structure, transportable in one (1) or more sections, which, in traveling mode, is eight (8) or more body-feet in

width, or forty (40) or more body-feet in length, or, when erected on site, is three hundred twenty (320) or more square feet, and which is *built on a permanent chassis* and designed to be used as a dwelling with or without a permanent foundation . . . .

Tenn.Code Ann. § 55–1–105(1) (2004) (emphasis added).[1] Additionally, all mobile homes and house trailers are required to be titled as motor vehicles under the Tennessee Motor Vehicle Title and Registration Law. Tenn.Code Ann. § 55–3–101(a) (2004). Both these provisions illustrate the temporary and mobile nature of these structures.

In 1985, the Tennessee Modular Building Act was enacted to regulate the construction, inspection, and installation of "modular building units." Tenn.Code Ann. §§ 68–126–301 to –320 (2001). A "modular building unit" is defined as:

[A] structural unit, or preassembled component unit including the necessary electrical, plumbing, heating, ventilating and other service systems, manufactured off-site and transported to the point of use for installation or erection, with or without other specified components, as a finished building and *not designed for ready removal to another site.*

Tenn.Code Ann. § 68–126–303(6) (2001) (emphasis added).

Unlike a mobile home or house trailer, a modular home is not built on a permanent chassis, and for that reason, it is not able to be readily moved to another location once installed or erected. Moreover, while mobile homes are titled as vehicles, modular homes are not. Once delivered and erected on the property, they become part of the property as a permanent improvement to the real estate similar to a "site-built" home.

The Oma Lee Williams subdivision's restrictive covenant does not define what is meant by "mobile home" or "trailer." However, the covenant was recorded on January 11, 1995, well after modular homes were specifically defined and regulated by statute as something distinct from mobile homes and trailers. Additionally, at the time the covenant was recorded, the difference between mobile homes and modular homes was already being recognized and addressed in restrictive covenants for nearby subdivisions. The following are excerpts from the recorded restrictive covenants containing reference to modular homes, along with their date of record: "No roundettes, modular or mobile homes shall be permitted on the Property." (Nov. 4, 1993); "No mobile homes, double-wides, trailers, modular homes, shacks or tents shall be used as either temporary or permanent residential or non-residential structures on any lot or parcel." (Nov. 5, 1993); "Mobile homes, modular or prefabricated homes shall not be permitted." (Nov. 8, 1993); "All trailers, mobile homes and/or modular homes are expressly prohibited." (April 13, 1994); "Mobile homes and/or modular homes are expressly prohibited . . . ." (Oct. 31, 1994); "All trailers, motor homes, mobile homes, and/or modular homes are expressly prohibited." (Nov. 21 1994). Unlike the language of these restrictive covenants, however, the Oma Lee Williams subdivision's restrictive covenant does not specifically refer to or make mention of modular homes.

While the trial court found that the structure was a modular home, it found that *Apollo Shores* was controlling, and

---

1. A "chassis" is the "rectangular steel frame, supported on springs and attached to the axles, that holds the body and motor of an automotive vehicle." *American Heritage Dictionary* 228 (4th ed.1970).

held that the restrictive covenant extended to bar modular homes, quoting the following from *Apollo Shores:* "the manner of construction between a 'modular home' and a 'mobile home' was a difference *without a distinction.*" By that reasoning, it did not matter that the restrictive covenant did not expressly bar modular homes because those fell within the same class of structures as mobile homes, trailers, and manufactured homes.

The Court of Appeals relied on prior Tennessee case law to hold that:

Whether Defendant's home is called a modular home, a manufactured home, a mobile home, a sectional home, or some other term of art, we find, as did the Trial Court, that the intent of the parties in adopting these restrictive covenants was to prohibit this type of structure from being erected on any lot in this subdivision.

As a general rule, restrictive covenants are not favored in Tennessee because they are in derogation of the right of free use and enjoyment of property. *See Arthur v. Lake Tansi Vill., Inc.,* 590 S.W.2d 923, 927 (Tenn.1979); *Shea v. Sargent,* 499 S.W.2d 871, 873 (Tenn.1973). Therefore, such restrictive covenants are strictly construed. *See Arthur,* 590 S.W.2d at 927; *Shea,* 499 S.W.2d at 873–74. Courts refrain from extending a restrictive covenant to any activity not clearly and expressly prohibited by its plain terms. *See Turnley v. Garfinkel,* 211 Tenn. 125, 362 S.W.2d 921, 923 (1962); *Beacon Hills Homeowners Ass'n, Inc. v. Palmer Props., Inc.,* 911 S.W.2d 736, 739 (Tenn.Ct.App.1995). When the terms of a covenant may be construed more than one way, the courts must resolve any ambiguities against the party seeking to enforce the restriction and in a manner which advances the unrestricted use of the property. *See Hillis v. Powers,* 875 S.W.2d 273,

275–76 (Tenn.Ct.App.1993); *Parks v. Richardson,* 567 S.W.2d 465, 468 (Tenn.Ct.App. 1977).

Despite these established rules of construction, past cases have tended to broadly construe restrictions against "trailers" and "mobile homes" on the basis that such a broad construction was consistent "with the desire of developers to prevent property owners from placing residential units that were constructed off-site onto subdivision lots." *Hicks v. Cox,* 978 S.W.2d 544, 548 (Tenn.Ct.App.1998). However, the present case is the first case to involve a modular home. The prior cases, including the *Apollo Shores* case which was relied on by the trial court, all dealt with mobile homes built on permanent chassis and titled and registered pursuant to the Motor Vehicle Title and Registration Law. *See Hicks,* 978 S.W.2d at 546–47; *Beacon Hills,* 911 S.W.2d at 738; *Albert v. Orwige,* 731 S.W.2d 63, 64 (Tenn.Ct.App.1987); *Apollo Shores,* 2000 WL 796126, at *3.

In *Albert,* the subdivision restricted the use of mobile homes on the premises. 731 S.W.2d at 64. The defendants purchased a structure which they were told was not a mobile home, but rather was a manufactured or factory-built home, and therefore not subject to the restriction. *Id.* The defendants argued that it was a "modular home" based on the fact that it was constructed differently than traditional mobile homes—their home was constructed with wooden studs and roof trusses, an asphalt shingle roof, a plywood subfloor, and exterior masonite siding. *Id.* at 65.

However, the structure did consist of two separate units which were pulled by tractor-trailers over the public highways to the defendants' lot. *Id.* at 64. The units were then bolted together and secured to poured concrete foundations. *Id.* The assembled structure was constructed on four I-beams running the length of the units.

*Id.* Following installation, the wheels, axles and tongues were removed from each of the units and returned to the manufacturer. *Id.* These could be reattached to the units, which could then be separated and towed away from defendants' property in the same manner in which they had been brought there. *Id.* A certificate of title had been issued for the structure and each unit of the structure had been given a vehicle identification number. *Id.*

The Court of Appeals held that the structure was a mobile home within the meaning of Tennessee Code Annotated section 55–1–105(d), notwithstanding the seller's advisement that it was not a mobile home and was constructed of different materials than many mobile homes. *Id.* at 64–65. The court found this to be "a distinction without a difference." *Id.* at 65. "[R]emoving the wheels or running gear of a mobile home and placing it on a permanent foundation does not convert the home into a permanent structure." *Id.* at 67. The structure remained readily "capable of being separated and transported to and reassembled at another lot." *Id.* at 68.

The facts in *Beacon Hills* are similar to those in *Albert.* The restrictive covenant prohibited any "structure of a temporary character [or] trailer." *Beacon Hills,* 911 S.W.2d at 737. The structure in question was a "manufactured home," which consisted of two units, pulled by tractor-trailer onto the lot. *Id.* at 738. The units, which were constructed on four I-beams, were attached together and secured to a concrete foundation. *Id.* Following installation, the wheels, axles, and tongues were removed but could be re-attached at any time, allowing the units to be moved to another location. *Id.* A certificate of origin for a vehicle was issued by the manufacturer, and a vehicle identification number was assigned to each unit. *Id.* The

court relied on *Albert* and the analysis therein to hold that the restriction against "trailers" included restrictions against "manufactured" or "mobile homes." *Id.* at 739.

More recently, in *Hicks,* the Court of Appeals again held that a restriction against "trailers" should be given a broad enough reading to include a restriction against "mobile homes." *Hicks,* 978 S.W.2d at 548–49. In *Hicks,* the restrictive covenant stated that "no tents, shacks, garages, barns, or other outbuildings erected on this tract shall [sic] any structure of a temporary character be used as a residence .... [and] no trailers shall be placed on subject property." *Id.* at 546. At dispute was a single-wide mobile home that a property owner had placed on her property as a primary residence. *Id.* at 547.

The court began by noting that the line of cases, including *Albert* and *Beacon Hills,* had a common theme: "that the terms 'mobile homes' or 'trailers' should be given a broad construction because, historically speaking, such a construction is consistent with the desire of developers to prevent property owners from placing residential units that were constructed off-site onto subdivision lots." *Id.* at 548. The court then determined that *Beacon Hills* was controlling:

> The restrictive covenants in [*Beacon Hills* ] are similar to the ones before us. Both are directed at "trailers"; both are aimed at preventing "temporary" residential structures. We find and hold that, when given its "usual, natural and ordinary meaning," the term "trailer" is subject to only one reasonable interpretation in the context of the period of time when the restriction was placed in the subject deed, i.e., 1986. We believe, as the trial court suggested, that the word "trailer" in the 1986 time frame

would include not only a camping trailer, but also a single-wide mobile home of the variety placed on the defendants' property. This holding is consistent with the statutory definition of mobile home or house trailer set forth at [Tennessee Code Annotated section] 55–1–105(a), which definition is also cited in *Beacon Hills.*

*Id.* at 549 (footnote and citations omitted).

Finally, in *Apollo Shores,* the case on which the trial court relied, the facts were nearly identical to those in *Hicks:* the restriction was against "trailers" and the structure at issue was a "double-wide mobile home." 2000 WL 796126, at *1. The issue was whether the mobile home was a "trailer" under the restrictive covenant. *Id.* at *2. Like all the structures in *Albert, Beacon Hills,* and *Hicks,* the mobile home in *Apollo Shores* was built on permanent chassis, was titled and registered pursuant to the Motor Vehicle Title and Registration Law, and could be relocated easily following reattachment of the wheels and axles. *Id.* at *4. For the same reasons cited in the prior cases, the court held that the double-wide mobile home was a "house trailer" under the restrictive covenant. *Id.* at *3. The court reasoned:

> The court [in *Albert* ] noted that the manner of construction between a "modular home" and a "mobile home" was a difference without a distinction. We agree that the same reasoning can be applied to a "manufactured home" and a "mobile home."
>
> [*Beacon,* 911 S.W.2d at 738]. We also found that the terms "mobile home" and

"trailer" had been used interchangeably during the relevant time period. *Id.*

In all the aforementioned cases, the restrictive covenants were recorded prior to the Tennessee Modular Building Act of 1985, which specifically defined modular homes as something very different and distinct from trailers or mobile homes. Had the developers of the Oma Lee Williams subdivision wished to prohibit modular homes in addition to mobile homes and trailers, such language should have been included. Because modular homes are defined by statute as different structures and because they have been recognized as different structures in other surrounding subdivisions at the time in question, we cannot expand the restrictive covenant to prohibit that which it does not explicitly state is prohibited.

## Conclusion

In sum, we hold that "modular homes" are distinct types of structures from "mobile homes" and "trailers," and because the restrictive covenant did not expressly prohibit "modular homes," the plain wording of the covenant cannot be expanded to prohibit the defendant's modular home.

Costs of this appeal are taxed to the Plaintiffs, James L. Williams, Brenda G. Williams, Charles Roberson, and Marjorie Roberson, jointly and severally, and their sureties, for which execution may issue if necessary.