# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 15, 2013 Session

## JASON C. WOODS ET AL. v. DAVID LOWREY[1] ET AL.

**Appeal from the Chancery Court for Bradley County**
**No. 2010-CV-253     Jerri S. Bryant, Chancellor**

---

**No. E2012-01215-COA-R3-CV-FILED-JULY 15, 2013**

---

The buyers of a house sued their real estate agent, the seller's real estate agent, and others, alleging that the defendants concealed the fact that their home's garage violated the neighborhood restrictive covenants. The trial court granted summary judgment, finding, as a matter of law, their garage did satisfy the requirement of the restrictive covenants, *i.e.*, that the garage be large enough to accommodate at least two cars. Because the undisputed material facts establish that the plaintiffs' home is in compliance, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellants, Jason C. Woods and Monica Woods.

David P. Hawley, Chattanooga, Tennessee, for the appellees, David Lowrey and FAVA, LLC.

B. Thomas Hickey, Jr., Chattanooga, Tennessee, for the appellees, Cindy Walker, individually and dba Crye-Leike Realtors, Inc. REO Division; Crye-Leike, Inc.; and Crye-Leike of Chattanooga, Inc. nka Crye-Leike South, Inc.

---

[1]Mr. Lowrey's name is misspelled "Lowery" in the complaint. The correct spelling is "Lowrey."

# OPINION

## I.

In February 2009, the plaintiffs purchased the property at issue – a house located at 112 Shady Oaks Drive ("the property") in McDonald. The plaintiffs' real estate agent was defendant David Lowrey. The property was sold by Federal National Mortgage Association ("FNMA"). Defendant Cindy Walker was FNMA's listing agent. At all times pertinent to this appeal, the plaintiff Mr. Woods was working in Iraq as a military contractor. As a consequence of this, Mrs. Woods was predominantly involved in finding and inspecting the property and negotiating its purchase.

On January 6, 2009, plaintiffs made a written offer on the property. The purchase and sale agreement provides, in the "special stipulations" section, that

> Listing Agent and/or seller to provide subdivision restrictions to buyer's agent within 2 days of binding agreement. Buyer has the right to cancel contract after receiving restrictions within 3 [days] of receiving [assurances regarding the] 2 car garage.

Plaintiffs reviewed the subdivision restrictions before closing on the house. The following restrictive covenant caused plaintiffs some concern:

> 2. <u>BUILDING TYPE AND LOCATION</u>. . . . Each dwelling must have a garage. The floor of the garage must be on the same level as the main floor of the dwelling. The garage must be large enough to accommodate at least two (2) cars. In addition to the garage just described, it is permissible to have an additional underground garage. All garages must be attached to the dwelling in the ordinary sense of being incorporated into the dwelling structure, or, in the alternative, they must be attached to the dwelling by a breezeway or other similar structure.

(Capitalization and underlining in original.) Plaintiffs' initial concerns were twofold: first, that the house's garage was not on the main floor level, but on the lower basement level, and second, that the garage only had one door, and the restriction required it to accommodate at least two cars. Mrs. Woods testified in her discovery deposition that "Mr. Lowrey and I discussed it, and he called Ms. Walker and said my client has some concerns about the garage. [Ms. Walker] said that [the restrictive covenants] had been amended."

Ms. Walker faxed the following amendment to Mr. Lowrey, who in turn provided it to plaintiffs: "Paragraph 2: 'Building Type and Location' is amended to exclude requirement that garage must be on same level as the main floor of the dwelling." (Underlining in original.) The amendment to the subdivision restrictions was executed and effective on August 12, 1999. Mrs. Woods testified that Mr. Lowrey assured her that Ms. Walker had confirmed that there was no problem with the subject garage meeting the subdivision restrictions because of the amendment. The sale of the house closed on February 12, 2009.

In August 2009, Mrs. Woods was approached by the developer of the subdivision, William T. Cates. Mr. Cates told her that the house was in violation of the neighborhood restrictive covenants because it did not have a two-car garage. Mr. Cates advised Mrs. Woods that plaintiffs would need to construct a garage on the property to conform to the restrictive covenants.

On August 6, 2010, plaintiffs brought this action against Mr. Lowrey; his employer, FAVA, LLC dba Exit Realty; Ms. Walker; her employer, Crye-Leike, Inc. and Crye-Leike, Realtors, REO Division ("Crye-Leike"); and Southern Title Insurance Corporation. Plaintiffs later amended their complaint to sue developers William T. Cates and his wife, Joyce A. Cates, and the builders and original owners of the house, Clyde J. Walker and Judy D. Walker.[2] The essence of plaintiff's complaint is their allegation that the garage fails to conform to the restrictive covenants, and that the defendants concealed and misrepresented this "fact."

Mr. Lowrey, FAVA, Cindy Walker, and Crye-Leike each filed a motion for summary judgment. After a hearing on April 13, 2012, the trial court entered an order granting summary judgment to Mr. Lowrey and FAVA and granting Cindy Walker and Crye-Leike partial summary judgment.[3] The trial court found "as a matter of law that the garage at issue does not violate the neighborhood restrictive covenants and, in the alternative, the developer had the authority to and did waive the neighborhood restrictions and covenants and as such the Doctrine of Negative Reciprocal Easements does not apply to the developer in this case or to this case." Plaintiffs timely filed a notice of appeal.

---

[2]The trial court granted Mr. and Mrs. Cates' motion to dismiss and the plaintiffs have not appealed this order. The only defendants involved in this appeal are Mr. Lowrey, FAVA, Cindy Walker, and Crye-Leike.

[3]The trial court designated its order to be a final judgment in accordance with Tenn. R. Civ. P. 54.02.

II.

Plaintiffs raise the following issues, as quoted from their brief: whether the trial court erred

> in granting [s]ummary [j]udgment based upon the Court's
> determination that: (A) The [plaintiffs'] home is not in violation
> of the subdivision restrictions and/or neighborhood restrictive
> covenants; and (B) Alternatively, even if the . . . home does
> violate the subdivision restrictions and/or neighborhood
> restrictive covenants that the developer had the authority to and
> did waive [them]; and (C) The doctrine of negative reciprocal
> easements does not apply to the developer or to this case.

III.

In reviewing the trial court's grant of summary judgment, we are guided by the following well-established standards as recently reiterated by the Supreme Court:

> A summary judgment is appropriate only when the moving party
> can demonstrate that there is no genuine issue of material fact
> and that it is entitled to judgment as a matter of law. Tenn. R.
> Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5
> (Tenn. 2008). When ruling on a summary judgment motion, the
> trial court must accept the nonmoving party's evidence as true
> and resolve any doubts concerning the existence of a genuine
> issue of material fact in favor of the nonmoving party. *Shipley
> v. Williams*, 350 S.W.3d 527, 536 (Tenn. 2011) (quoting *Martin
> v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)). "A grant
> of summary judgment is appropriate only when the facts and the
> reasonable inferences from those facts would permit a
> reasonable person to reach only one conclusion." *Giggers v.
> Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009)
> (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn.
> 2000)). "The granting or denying of a motion for summary
> judgment is a matter of law, and our standard of review is de
> novo with no presumption of correctness." *Kinsler v. Berkline,
> LLC*, 320 S.W.3d 796, 799 (Tenn. 2010).

*Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013). "The construction of a restrictive covenant, like other written contracts, is a question of law." *Massey v. R.W. Graf, Inc.*, 277 S.W.3d 902, 908 (Tenn. Ct. App. 2008).

IV.

The dispositive issue is straightforward – whether the plaintiffs' garage conforms with the following restrictive covenant, as amended:

> Each dwelling must have a garage. The garage must be large enough to accommodate at least two (2) cars. In addition to the garage just described, it is permissible to have an additional underground garage.

In construing the restrictive covenant, we bear in mind these principles:

> As a general rule, restrictive covenants are not favored in Tennessee because they are in derogation of the right of free use and enjoyment of property. *See Arthur v. Lake Tansi Vill., Inc.*, 590 S.W.2d 923, 927 (Tenn. 1979); *Shea v. Sargent*, 499 S.W.2d 871, 873 (Tenn. 1973). Therefore, such restrictive covenants are strictly construed. *See Arthur*, 590 S.W.2d at 927; *Shea*, 499 S.W.2d at 873-74. Courts refrain from extending a restrictive covenant to any activity not clearly and expressly prohibited by its plain terms. *See Turnley v. Garfinkel*, 211 Tenn. 125, 362 S.W.2d 921, 923 (1962); *Beacon Hills Homeowners Ass'n, Inc. v. Palmer Props., Inc.*, 911 S.W.2d 736, 739 (Tenn. Ct. App. 1995). *When the terms of a covenant may be construed more than one way, the courts must resolve any ambiguities against the party seeking to enforce the restriction* and in a manner which advances the unrestricted use of the property. *See Hillis v. Powers*, 875 S.W.2d 273, 275-76 (Tenn. Ct. App. 1993); *Parks v. Richardson*, 567 S.W.2d 465, 468 (Tenn. Ct. App. 1977).

*Williams v. Fox*, 219 S.W.3d 319, 324 (Tenn. 2007) (emphasis added).

Mrs. Woods testified as follows regarding the house's garage:

Q: [C]an you pull a car in that downstairs through the garage door?

A: Yes. You could pull a car in.

Q: Can you pull more than one car in there?

A: I guess it depended on the size of the car, but we could probably pull them this way if they were small enough.

Q: Back to back?

A: Uh-huh.

                     \*        \*        \*

Q: And how many cars, or SUVs rather, anything other than like a motorcycle or jet ski or something, how many at one time have you parked or put in there?

A: One to change the oil and one that – you could probably fit two small end to end if you had to.

Q: Have you done that?

A: No.

Q: Do you know of anyone who has tried or succeeded in doing that?

A: Yes.

Q: Who?

A: My husband.

Mrs. Woods' testimony establishes that the garage is large enough to accommodate at least two cars. The restrictive covenants do not require that the garage have two doors, nor that the garage be designed so as to enable cars to be parked side-by-side. We decline to extend

the restrictive covenant "to any activity not clearly and expressly prohibited by its plain terms." ***Williams***, 219 S.W.3d at 324. Plaintiffs argue as follows in their brief:

> As the proof in the record establishes, the basement of the Woods home is underground. It was listed as such and acknowledged by Cindy Walker to be such in her broker price opinions and deposition testimony. So, it would not matter if the Plaintiffs could park 10 cars in their basement because it is an underground structure. Plus as the restrictive covenants clearly state, this type of basement or garage space is permissible "**in addition to**" a two-car garage.

(Bold lettering in original.) The flaw in plaintiffs' argument is that the restrictive covenants do not require the garage to be "above ground," or on the main level. To accept the plaintiffs' argument would be to ignore the amendment and rewrite the restrictive covenants to say what they said before the amendment was executed. There are photographs of the garage in the record. It is on the back side of the house with an entrance at ground level in the back. It leads to a basement that is partially underground. Based on the undisputed proof, we agree with the trial court's ruling, as a matter of law, that the garage complies with the restrictive covenants and the property is not in violation.

Mrs. Woods testified that she viewed the property "probably 4 or 5 times" before they made an offer, and that no one restricted her examination in that she was "able to go throughout the home and look at anything, measure anything." Plaintiffs were provided, and they examined, the restrictive covenants, as amended, prior to making an offer on the property. Mrs. Woods stated that plaintiffs love their home and have no other complaints than the allegation that the garage violates the restrictive covenants. She also testified that no other neighbor has made a complaint about the Woods' garage, so at this point there is no one complaining about the garage, nor arguing that it violates the restrictive covenants, except plaintiffs.[4]

---

[4]Although Mr. Cates signed an affidavit stating his opinion that the property was not in compliance with the garage restriction, he later filed a "waiver of restrictions, claims and rights" stating that he and his wife,

> individually and as Developers of Shady Oaks Subdivision, . . .do hereby withdraw any objection and waive any and all rights claims, demands, duties to enforce and any other rights or obligations that they have . . . under the terms of the Restrictive Covenants [and] permit and declare that the [Woods'] home is except [*sic*] from the requirement(s) concerning

(continued...)

The trial court asked counsel for the plaintiffs "[w]hat does your client want out of this." He replied "[a] garage." That is exactly what the plaintiffs had when they filed this lawsuit. The trial court's ruling placed plaintiffs in exactly the same position they bargained for and thought they were in at the time of closing. They have the same house they made an offer on, in the same condition, and in compliance with the subdivision's restrictive covenants. In our judgment, the saying "no harm, no foul" applies in this case.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellants, Jason C. Woods and Monica Woods. The case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE

---

[4](...continued)
> garages as set forth in the Restrictive Covenants and the Restrictive Covenants are hereby amended to exclude the [Woods'] home from the requirement(s) concerning garages.

In light of our holding that the property does not violate the restrictive covenants, the issues of whether Mr. Cates should be judicially estopped from waiving a violation, and whether the concept of negative reciprocal easements should apply to bar such a waiver, are moot and pretermitted.