IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 15, 2025 Session

## LONE MOUNTAIN SHORES OWNERS ASSOCIATION, INC. v. HENRY BENNAFIELD ET AL.

**Appeal from the Circuit Court for Claiborne County**
**No. CV-2354          Elizabeth C. Asbury, Chancellor**
_____

**No. E2024-00569-COA-R3-CV**
_____

The plaintiff homeowners' association filed this lawsuit against certain defendant homeowners who owned homes within its subdivision, seeking to enjoin the homeowners from using their residences as short-term rentals. After discovery, both parties filed motions for summary judgment that focused on interpretation of the association's restrictive covenants with respect to short-term rental properties. Following a hearing on the competing motions for summary judgment, the trial court granted summary judgment in favor of the defendant homeowners and concomitantly denied the association's motion. The trial court concluded that the language of the restrictive covenants was ambiguous as to short-term rentals and therefore unenforceable to enjoin the homeowners from using their residences as short-term rental properties. The association has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Kevin C. Stevens, Reece Brassler, and Kevin Escalona, Knoxville, Tennessee, for the appellant, Lone Mountain Shores Owners Association, Inc.

Ryan L. Sarr, Knoxville, Tennessee, for the appellees, Henry Bennafield et al.

### OPINION

### 1. Factual and Procedural Background.

The underlying facts in the case at bar are largely undisputed. In November 2022, the plaintiff homeowners' association, Lone Mountain Shores Owners Association, Inc.

("LMSOA"), initiated this action in the Claiborne County Circuit Court ("trial court") seeking a permanent injunction against several individual defendant homeowners ("the Homeowners") who owned residences in the Lone Mountain Shores subdivision.[1] LMSOA sought to enjoin the Homeowners from offering their residences for short-term rentals, such as through Airbnb, Vacation Rentals By Owner ("VRBO"), and the like. The Homeowners filed a motion to dismiss, arguing that the joinder of all property owners in the subdivision was necessary for the lawsuit to proceed. The trial court denied the motion to dismiss by order entered on March 13, 2022. On February 2, 2023, the parties agreed to allow LMSOA to amend its complaint, and LMSOA subsequently filed a second amended complaint on February 6, 2023.

On March 29, 2023, the Homeowners filed an answer and countercomplaint to LMSOA's second amended complaint, but ultimately elected to nonsuit their countercomplaint. In their answer, the Homeowners argued that the association's bylaws, the 2013 "Amended and Restated Declaration of Covenants, Restrictions, and Easements for Lone Mountain Shores" ("2013 Amended Covenants"), contained language that was ambiguous and therefore unenforceable against the Homeowners' practice of using their properties for short-term rentals.[2] The Homeowners also raised the affirmative defenses of judicial estoppel, equitable estoppel, waiver, abandonment, and laches. The Homeowners asserted, *inter alia*, that LMSOA had waived and abandoned any right to seek an injunction prohibiting short-term rentals because the association had allowed the Homeowners to use their residences as short-term rentals for over ten years with no complaint.

After some discovery, the parties filed countervailing motions for summary judgment, and the trial court heard argument respecting both motions on January 25, 2024. The motions for summary judgment focused on interpretation of the 2013 Amended Covenants as that document pertained to commercial and rental use of residences within the subdivision. There was no dispute between the parties that the 2013 Amended Covenants were valid; that the covenants applied to the defendant Homeowners and their residences; that the Homeowners had been engaged in short-term rental of their properties; and that LMSOA had issued "cease and desist" letters to some of the Homeowners, which had led to the initial filing of the instant lawsuit.

LMSOA maintained that the language of the 2013 Amended Covenants prohibited all short-term rentals of property within the subdivision while the Homeowners contended that the covenants allowed short-term rentals so long as property owners did not rent their property to more than one renter, or "family unit," at a time. The proximal dispute centered on the following applicable provisions of the 2013 Amended Covenants:

---

[1] In January 2023, Judge John D. McAfee recused himself and Chancellor Elizabeth C. Asbury presided over the case thereafter.

[2] The covenants had been amended and restated in 2020, but the applicable provisions in the instant lawsuit—Sections 2.14, 6.04, and 6.07—were not amended as part of that revision.

Section 2.14 **"Single Family Residential Purposes"** shall mean the property, consisting of just one primary Dwelling and all ancillary buildings on it shall be occupied by just one legitimate single housekeeping unit as distinguished from unaffiliated individuals or groups occupying a motel, hotel, bed & breakfast, or boardinghouse. Additionally, allowances are made for one accessory living quarters, such as a mother-in-law suite, without violating the "single family residential use" provided this secondary living quarters meets the requirements of Section 6.05 of these Covenants. Any rental accommodations and services such as those provided by hotels, motels, bed & breakfasts, rooming or boarding houses, apartment buildings or condominiums are excluded by this definition.

\* \* \*

Section 6.04 **Residential Use Only.** All Lots shall be used for single family residential purposes only, and no commercial use is permitted. This restriction is not to be construed to prevent rental of any Lot or any dwelling for private single family residential purposes or to prevent an Owner from conducting home occupations in a Dwelling, provided such occupations: (a) are subordinate to the primary residential use; (b) occupy no more than twenty percent (20%) of the Dwelling's floor area; and (c) employ not more than two (2) persons.

Examples of prohibited commercial uses of a Lot or any dwelling include providing the services of or operating as a restaurant, an inn, a boarding house, or a bed-and-breakfast or providing other atypical rental services of a commercial nature.

Examples of non single family residential purposes uses of a Lot or any dwelling include, but are not limited to: occupancy by two or more unaffiliated individuals or groups that function as independent housekeeping units; owners or their agents occupying any part of the property at the same time as renters; utilizing the Lot or any dwelling as a fraternity, sorority or dorm complex; or using the Lot or any dwelling as a Group Home or institution of any kind.

\* \* \*

Section 6.07 Rental. Lots and Dwellings may be rented only for private single-family residential purposes subject to the following provisions:

a. The renting to unaffiliated individuals or groups at the same time is prohibited;

b. Tenants are required to abide by all [Lone Mountain Shores] Governing Documents;

c. Owners are responsible for the actions of their tenants. Each Owner shall take appropriate steps and should put in place additional rules, limitations and restrictions as necessary to ensure that tenants do not conduct deleterious activities or otherwise create a nuisance to other Owners;

d. All rules, regulations, or use restrictions of these Covenants promulgated pursuant hereto that govern the conduct of Owners and that provide for sanctions against Owners also apply to all occupants of any Lot.

Upon conducting a hearing on the competing motions for summary judgment, the trial court entered a final order on March 4, 2024. First, the trial court determined that interpretation of the 2013 Amended Covenants was a question of law and that the court must "construe the [2013 Amended Covenants] to discern whether any ambiguity exists." The court then analyzed the language of the covenants to determine whether the relevant portions of the 2013 Amended Covenants were ambiguous or susceptible to more than one reasonable interpretation.

Relying on the Tennessee Supreme Court's analysis in *Pandharipande v. FSD Corp.*, 679 S.W.3d 610 (Tenn. 2023), the trial court reviewed applicable dictionary definitions of each of the types of accommodations, rentals, and services prohibited by the express language of the 2013 Amended Covenants, as well as other key terms. After reviewing these definitions, the trial court determined that each of the expressly prohibited uses of property pertained to "facilities/buildings that contain many parts or rooms which are used or occupied by separate individuals or groups who have no affiliation with each other." The trial court additionally found that the expressly prohibited commercial uses referred to "entities where services are provided." The trial court ultimately concluded that because the 2013 Amended Covenants did not plainly and expressly prohibit short-term rentals, and because the language of the 2013 Amended Covenants with respect to use of properties was susceptible to more than one reasonable interpretation, the 2013 Amended Covenants were ambiguous as to short-term rentals and therefore unenforceable to enjoin the Homeowners from their practice of renting their properties through Airbnb, VRBO, and other short-term rental platforms.

In support, the trial court noted that two different boards of directors of LMSOA had interpreted the 2013 Amended Covenants in divergent ways as they pertained to rental

- 4 -

of subdivision properties: one to allow short-term rentals and another to disallow them. The trial court also noted that the parties had "meticulously analyzed the [2013 Amended Covenants] at issue and reached opposite conclusions[.]" The trial court concluded that these discrepancies in interpretation further supported its finding that the 2013 Amended Covenants were ambiguous with respect to the Homeowners' use of their residences as short-term rentals.

After concluding that the terms of the 2013 Amended Covenants were ambiguous and therefore unenforceable to enjoin the Homeowners from operating short-term rentals, the trial court granted the Homeowners' motion for summary judgment and denied LMSOA's summary judgment motion. As such, the trial court deemed it unnecessary to address the Homeowners' defenses of waiver, abandonment, or equitable estoppel. LMSOA timely appealed.

## II. Issues Presented

LMSOA raises the following issues on appeal, which we have reordered and restated as follows:

1. Whether the trial court erred by relying on *Pandharipande*, 679 S.W.3d 610, to conclude that the 2013 Amended Covenants were ambiguous when the facts in *Pandharipande* are wholly distinguishable from those presented in this case.

2. Whether the trial court erred by concluding that the 2013 Amended Covenants were ambiguous because the court failed to consider the explicit definition of "single family residential purposes" contained in Section 2.14 of the document and failed to apply long-standing canons of contractual interpretation.

The Homeowners raise the following additional issues:

3. Whether LMSOA waived and abandoned its ability to claim that the 2013 Amended Covenants prohibited short-term rentals when LMSOA had affirmatively approved the Homeowners' right to rent their homes on a short-term basis for more than ten years.

4. Whether the doctrine of equitable estoppel bars LMSOA's claim as to short-term rentals when LMSOA induced some of the Homeowners to purchase homes for use as short-term rentals in the Lone Mountain Shores subdivision by concealing LMSOA's intent to file the instant action.

### III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has elucidated:

> A trial court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A disputed fact is material if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 749 (Tenn. 2015) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). "[D]isputes of material fact are 'genuine'—and therefore preclude the entry of summary judgment—only if the evidence produced at the summary judgment stage 'is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rye*, 477 S.W.3d at 251 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

*Pandharipande*, 679 S.W.3d at 618.

"The construction of restrictive covenants, like other written contracts, is a question of law." *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 480-81 (Tenn. Ct. App. 2012) (citing *Massey v. R.W.Graf, Inc.*, 277 S.W.3d 902, 908 (Tenn. Ct. App. 2008)). "[B]ecause a covenant is a contract, we interpret it by looking to the plain meaning of the words in the document." *Pandharipande*, 679 S.W.3d at 620 (internal citations, quotation marks, and punctuation marks omitted). Our standard of review for contract interpretation is "de novo on the record according no presumption of correctness to the trial court's conclusion of law." *Old Hickory Coaches, LLC v. Star Coach Rentals, Inc.*, 652 S.W.3d 802, 812 (Tenn. Ct. App. 2021) (citing *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). "[A] cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Old Hickory Coaches, LLC*, 652 S.W.3d at 812 (citing *Allstate Ins. Co.*, 195 S.W.3d at 611)).

Additionally, "because restrictive covenants are in derogation of the right of free use and enjoyment of property, they are strictly construed and should not be extended to any activity not clearly and expressly prohibited by their plain terms." *Pandharipande*,

679 S.W.3d at 620 (quoting *Williams v. Fox*, 219 S.W.3d 319, 324 (Tenn. 2007)) (internal quotation marks omitted). "When the terms of a covenant may be construed in more than one way, courts must resolve any ambiguity against the party seeking to enforce the restriction and in a manner which advances the unrestricted use of the property." *Hughes*, 387 S.W.3d at 481 (citing *Williams*, 219 S.W.3d at 324).

IV. Ambiguity of the 2013 Amended Covenants

LMSOA's overarching argument is that the trial court erred by finding the terms of the 2013 Amended Covenants to be ambiguous as they related to restricting short-term rentals in the subdivision. When determining ambiguity in a restrictive covenant, as in a contract, this Court adheres to the following guiding principles:

> Contractual language is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons could come to different conclusions as to the meaning of the contract. However, an ambiguity arises in a contract only when contractual terms are susceptible to fair and honest differences, and when both of the interpretations advanced are reasonable.
>
> A word or expression in the contract may, standing alone, be capable of two meanings and yet the contract may be unambiguous. Thus, in determining whether or not there is such an ambiguity as calls for interpretation, the whole instrument must be considered, and not an isolated part, such as a single sentence or paragraph. The language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.

*Fisher v. Revell*, 343 S.W.3d 776, 780 (Tenn. Ct. App. 2009) (quoting 77 C. J. S. *Contracts* § 304). As with contract interpretation, "we may conclude that the language in a [restrictive] covenant is ambiguous if it is 'susceptible of more than one reasonable interpretation.'" *Pandharipande*, 679 S.W.3d at 620 (quoting *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001)).

The trial court relied on the general principles and framework for analyzing restrictive covenants set forth in *Pandharipande*, 679 S.W.3d 610. Like this case, *Pandharipande* concerned a dispute between a homeowner and a homeowners' association regarding whether the association's restrictive covenants permitted short-term rentals by homeowners within its subdivision. *See id.* at 620. The dispute centered upon the restriction that subdivision properties "shall be used for residential and no other purposes," which had been written into the original 1984 restrictive covenants. *See id.* at 622-23. The *Pandharipande* Court conducted a detailed analysis of the phrase by reviewing dictionary definitions of the terms "residential," "used," and "purposes." *See id.* at 623. After

conducting that review, the Court concluded that one group of definitions for the term "residential" carried "a temporal element and require[d] a degree of permanence" while another camp suggested that the term "residential" could also include "shorter stays as well." *See id.* After considering the disparate definitions of the term, the *Pandharipande* Court concluded that the 1984 covenants were ambiguous concerning what constituted a "residential" purpose. *See id.* at 625-26. Accordingly, the Court determined that the 1984 covenants were unenforceable against the homeowner because they did not contain language that clearly prohibited short-term rentals.[3] *See id.*

In the case at bar, the trial court similarly reviewed dictionary definitions of the relevant terms in the 2013 Amended Covenants. The court also considered the plain language of the 2013 Amended Covenants as a whole, focusing on the interplay between Section 2.14 (defining "Single Family Residential Purposes"), Section 6.04 (explaining the meaning of "residential use only"), and Section 6.07 (providing guidance on allowable rentals). The court ultimately determined that the terms of the 2013 Amended Covenants were ambiguous concerning short-term rentals and therefore unenforceable to prohibit the Homeowners from renting their properties on short-term rental platforms such as Airbnb and VRBO.

LMSOA postulates that the trial court erred by "applying the [*Pandharipande*] framework and finding that the 2013 Amended Covenants were ambiguous" because the "language of the restrictive covenants analyzed in [*Pandharipande*] is wholly distinguishable from the language of the 2013 Amended Covenants at issue here." Although LMSOA is correct that the language used in the *Pandharipande* restrictive covenants differs from the language in the 2013 Amended Covenants, these differences do not prevent the trial court from relying on *Pandharipande* for its general principles concerning the proper interpretation and analysis of restrictive covenants. Therefore, despite the factual differences, we find no error in the trial court's reliance on the principles set forth in *Pandharipande* as applied to the restrictive covenants in this matter.

LMSOA argues that in determining that the covenants were ambiguous relative to short-term rentals, the trial court failed to consider the "explicit definition" of "single family residential purposes" included in Section 2.14 of the document. Section 6.04 instructs that "[a]ll Lots shall be used for single family residential purposes <u>only</u>, and no commercial use is permitted." (Emphasis added.) Section 2.14 defines "single family residential purposes" as follows:

---

[3] Although the *Pandharipande* Court held that the original restrictive covenants at issue, which had been written in 1984, were ambiguous as to short-term rentals and therefore did not prohibit such use, the Court also held that a later amended version of the covenants did prohibit short-term rentals. *See Pandharipande*, 679 S.W.3d at 631 ("We further hold that Pandharipande is prohibited from using his property as a short-term rental. Although the 1984 covenants do not prohibit that use, the 2018 amendments to those covenants do."). Accordingly, the Tennessee Supreme Court affirmed the decision of the trial court to grant summary judgment in favor of the homeowners' association. *Id*.

Section 2.14 **<u>"Single Family Residential Purposes"</u>** shall mean the property, consisting of just one primary Dwelling and all ancillary buildings on it shall be occupied by just one legitimate single housekeeping unit as distinguished from unaffiliated individuals or groups occupying a motel, hotel, bed & breakfast, or boardinghouse. Additionally, allowances are made for one accessory living quarters, such as a mother-in-law suite, without violating the "single family residential use" provided this secondary living quarters meets the requirements of Section 6.05 of these Covenants. Any rental accommodations and services such as those provided by hotels, motels, bed & breakfasts, rooming or boarding houses, apartment buildings or condominiums are excluded by this definition.

The trial court consulted Merriam-Webster's Online Dictionary ("Merriam-Webster")[4] to review the definitions of each of the expressly excluded types of accommodations listed in the final sentence of Section 2.14: "hotel," "motel," "bed & breakfast," "boarding house," "apartment building," and "condominium." The trial court also consulted the Merriam-Webster definitions of the additional prohibited "commercial uses" and "non single family residential purposes" in Section 6.04 of the covenants: "restaurant," "inn," "fraternity/sorority," "dorm complex," "group home," and "institution." The court then considered the respective dictionary definitions of other relevant descriptive terms for prohibited uses throughout the 2013 Amended Covenants: "unaffiliated" and "independent." The trial court concluded:

> When analyzing the foregoing definitions, in light of the express language in Section 2.14 and 6.04, it appears that all of the examples of non-single family residential purposes pertain to facilities/buildings that contain many parts or rooms which are used or occupied by separate individuals or groups who have no affiliation with each other. Additionally, the prohibited commercial uses refer to entities where services are provided.

(Paragraph numbering omitted.)

LMSOA challenges the trial court's conclusion and focuses on the last sentence of Section 2.14 to advance its position, which reads:

> Any rental accommodations and services such as those provided by hotels, motels, bed & breakfasts, rooming or boarding houses, apartment buildings or condominiums are excluded by this definition.

---

[4] The trial court stated that the definitions were taken from "Merriam-Webster.com dictionary" located at "https://www.merriam-webster.com/dictionary (February 20, 2024)." All definitions from Merriam-Webster's online dictionary used in this Opinion can be accessed at https://www.merriam-webster.com/dictionary/dictionary (last visited on June 4, 2025).

LMSOA posits that the drafters of the 2013 Amended Covenants intended, by beginning this sentence with the word, "any," to "exclude[] from the definition of 'single-family residential use' *any* uses which offer one, some, or all the benefits or uses that are provided by the listed examples and any other transient accommodation." LMSOA assumes that "each of the provided examples [in Sections 2.14 and 6.04] houses patrons for a short term, generally less than thirty (30) days[.]" By LMSOA's logic, short-term rentals through platforms such as Airbnb and VRBO—even though they are not specifically listed as exclusions—are nonetheless excluded by implication because "[j]ust like hotels, motels, bed & breakfasts, rooming/boarding houses, etc., short-term rentals provide the service of overnight lodging, are billed on a daily basis, and are generally rented for periods of less than thirty (30) days." Additionally, LMSOA argues that Airbnb and VRBO share the following significant features with the listed exclusions in Section 2.14: (1) they work on a "check-in and check-out basis"; (2) they provide services such as "cleaning, housekeeping and linen services"; and (3) they provide "complimentary consumables," such as beverages, toiletries, and online booking.

Certainly, short-term rentals offered through platforms like Airbnb and VRBO can be found to share common characteristics with some of the listed exclusions in Section 2.14, such as the types of services provided, the short duration of a typical guest stay, overnight lodging, and complimentary consumables. However, LMSOA's supposition that each of the prohibited examples in Section 2.14 "house patrons for a short term, generally less than thirty (30) days" and are therefore all "utilized by transient guests" is inherently incorrect. Contrary to LMSOA's assertion, two specific accommodations excluded from the definition of "single family residential purposes"—namely apartment buildings and condominiums—do not typically provide guest services or share characteristics commonly associated with short-term rentals or guest stays of thirty days or less.

Merriam-Webster defines "apartment building" as a "building containing separate residential apartments."[5] It defines "condominium" as a "unit" characterized by "individual ownership . . . in a multiunit structure (such as an apartment building) or on land owned in common (such as a town house complex)." Neither of these definitions indicates "transient" occupancy, nor does either include any parameters for the length of time that an individual or group may normally occupy the building. In addition, neither definition includes characteristics associated with short-term rentals such as "check in" and "check out" procedures, overnight lodging, daily billing, or services such as cleaning, housekeeping, linen exchange, or complimentary consumables. The definitions do, however, contemplate that both apartment buildings and condominiums are structures containing multiple separate residential units. This comports with the trial court's conclusion that each of the listed exclusions in Section 2.14 pertains to buildings or

---

[5] "Apartment" is defined as "a room or set of rooms fitted especially with housekeeping facilities and usually leased as a dwelling."

facilities that contain many parts or rooms which are used by unaffiliated groups or individuals.

Moreover, the terms "apartment building" and "condominium" also appear in Section 6.06 of the 2013 Amended Covenants, and the descriptions of these terms therein also comport with the trial court's conclusion. Section 6.06, which is entitled, "Types of Dwellings Prohibited," describes apartment buildings and condominiums as "multiple family residences" and specifically states that this type of accommodation is prohibited in the Lone Mountain Shores subdivision. Section 6.06 provides: "The construction of any type of multi-family residence, such as a condominium, duplex, triplex, apartment building, townhouse, lodging house, clubhouse, or any similar structure, is prohibited." Notably, Section 6.06 does not prohibit short-term occupancy or transient guests and does not associate "condominium" or "apartment building" with short-term stays or set a minimum timeframe for a stay. As with the dictionary definitions, the 2013 Amended Covenants document itself describes "apartment building" and "condominium" not in terms of length of stay but rather as buildings that house multiple, separate individuals or families simultaneously.

Our independent review of the 2013 Amended Covenants further supports the trial court's conclusion that the drafters intended to prohibit the simultaneous use of dwellings by unaffiliated groups. Section 2.14 distinguishes allowable "single family residential purposes" from prohibited use by "unaffiliated individuals or groups." Section 6.04 plainly states that lots shall be used for "single family residential purposes," as opposed to "non single family residential purposes," which include "occupancy by two or more unaffiliated individuals or groups that function as independent housekeeping units[.]" Section 6.07, which governs rental of properties in the subdivision, clearly states that "renting to unaffiliated individuals or groups at the same time is prohibited[.]"

By contrast, nothing in Sections 2.14, 6.04, or 6.07 proscribes any maximum or minimum length of stay for an occupant. Instead, as stated above, the restrictive language contained in these three sections relates to the number of unaffiliated guests or occupants allowed on a property at any given time rather than to duration of stay. Furthermore, the 2013 Amended Covenants contain no directives concerning the length of time a visitor or renter may occupy a dwelling. Contrary to LMSOA's assertion, the 2013 Amended Covenants include no specific prohibition against "transient guests." Merriam-Webster defines a "transient" individual as one who is "passing through or by a place with only a brief stay or sojourn." Nowhere do the 2013 Amended Covenants define or include the words "transient," "brief," or any other descriptor governing the length of time an individual or family may rent or occupy a property in the subdivision.[6]

---

[6] Section 6.06 allows an owner to "temporarily place a recreational vehicle, motor coach, or travel trailer upon his or her Lot and reside in it for a maximum of one (1) year" pending construction of a residence. Section 6.16 also uses the word "temporary" as that word relates to "travel trailers, recreational vehicles, or utility trailers" that may be "utilized for security purposes or as a temporary residence during the period

Concerning Section 6.07, the section governing property rentals, we emphasize that this section expressly allows properties within the subdivision to be rented and provides specific instructions and limitations for such rentals. Had the drafters intended to prohibit short-term rentals or to limit the minimum or maximum timeframe that a property could be rented, Section 6.07 could have been written specifically with those express provisions and prohibitions in place.

For the above-stated reasons, we reject LMSOA's argument that the drafters of the 2013 Amended Covenants clearly intended the language of Section 2.14 to exclude short-term rentals or "any other transient accommodation" from its definition of "single family residential purposes." We find no such prohibitive language to support this assertion. Therefore, we determine that the Homeowners' interpretation of the 2013 Amended Covenants to allow use of their properties as short-term rentals was reasonable. *See Fisher*, 343 S.W.3d at 780.

LMSOA urges that under the trial court's interpretation of the 2013 Amended Covenants, "properties within Lone Mountain Shores can be rented in any way for any period of time so long as the persons renting the property are affiliated." LMSOA further propounds that such interpretation "does not stand to reason because nothing within the provision permits such use." However, LMSOA's postulate that properties can now be rented "in any way" so long as renters are "affiliated" fails to consider the several and specific forms of property rental and commercial uses that are explicitly prohibited in Sections 2.14 and 6.04.

Furthermore, we discern a fundamental problem with LMSOA's assertion that interpreting the 2013 Amended Covenants to allow short-term rental of property "does not stand to reason" because "nothing within the provision permits such use." The standard does not require that a restrictive covenant must expressly permit a type of property use before a homeowner can use his or her property for that purpose. *See Pandharipande*, 679 S.W.3d at 620 ("[W]e keep in mind that "[a] property owner's right to own, use, and enjoy private property is a fundamental right." (quoting *Phillips v. Hatfield*, 624 S.W.3d 464, 474 (Tenn. 2021))). On the contrary, it is the <u>prohibited</u> uses of property that must be expressly and unambiguously stated in a restrictive covenant for the prohibition to take effect. *See id.* ("[B]ecause restrictive covenants are in derogation of the right of free use and enjoyment of property, they are strictly construed and should not be extended to any activity not clearly and expressly prohibited by their plain terms." (quoting *Williams*, 219 S.W.3d at 324)) (internal punctuation marks omitted). For these reasons, LMSOA's argument on this point is unavailing.

---

of construction" of a residence. These time restrictions are not related to rental of properties or to guests within the subdivision.

In the absence of any express time limitations or directives for renting or occupying the subject properties, we decline to impose such restrictions where there are none. *See id*. Accordingly, the trial court did not err when it found that the plain language of the 2013 Amended Covenants could reasonably be interpreted to allow short-term rentals, such as through Airbnb and VRBO. For the same reasons, the trial court correctly determined that the 2013 Amended Covenants are ambiguous as they relate to short-term rentals because they are "susceptible to more than one interpretation," as evinced by the fact that the parties in this action reasonably came to different conclusions as to their meaning. *See Fisher*, 343 S.W.3d at 780. Because we find that the 2013 Amended Covenants are ambiguous, we also conclude that they are unenforceable against the Homeowners in this action. *See, e.g.*, *Pandharipande*, 679 S.W.3d at 625-26; *see Fisher*, 343 S.W.3d at 780. Furthermore, we are mindful that in the context of restrictive covenants of property, we "must resolve any ambiguity against the party seeking to enforce the restriction and in a manner which advances the unrestricted use of the property." *See Hughes*, 387 S.W.3d at 481 (citing *Williams*, 219 S.W.3d at 324).

## V. Conclusion

For the above-stated reasons, we affirm the trial court's grant of summary judgment in favor of the Homeowners upon its determination that the language in the 2013 Amended Covenants is ambiguous and therefore unenforceable against the Homeowners to prohibit them from using their properties as short-term rentals within the Lone Mountain Shores subdivision. Because we affirm the trial court in all respects, the Homeowners' issues of waiver, abandonment, and equitable estoppel are pretermitted as moot. This case is remanded to the trial court for enforcement of the judgment and collection of costs below. Costs on appeal are assessed to the appellant, Lone Mountain Shores Owners Association, Inc.

s/Thomas R. Frierson, II

_____

THOMAS R. FRIERSON, II, JUDGE